KEMOS, INC. and Rohm and Haas Company, Plaintiffs-Appellees,

v.

I. Walton BADER, Defendant-Appellant.

Nos. 75–2178, 75–2179.

United States Court of Appeals, Fifth Circuit.

Jan. 20, 1977.

Rehearing and Rehearing En Banc Denied Feb. 24, 1977.

I. Walton Bader, New York City, (Pro Se).

Burton H. Shostak, St. Louis, Mo., for defendant-appellant.

J. D. Fleming, Jr., Atlanta, Ga., for plaintiffs-appellees.

Before GOLDBERG, MORGAN and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Plaintiffs brought these Georgia diversity suits in the district court seeking a declaratory judgment to resolve a claim that was being asserted against them by defendant under a stock option agreement. By summary judgment and dismissal of counterclaims, the district court held that defendant had no valid claim. We affirm.

The issues in the case revolve around a complete sale of assets by a corporation with which defendant had a stock option agreement. In 1973 Polaris Carpet Mills, Inc., for legal services, gave Attorney Bader an option to purchase 100,000 shares of Polaris stock at ten cents a share until June 1, 1978. Bader was also to receive a fee of twenty-five dollars an hour for services rendered in excess of 500 hours, and reimbursement for expenses. The option agreement provided that:

> If there is any consolidation, amalgamation or merger of POLARIS CARPET MILLS, INC., this option shall apply pro rata to the shares of the consolidated, amalgamated or merged company.

On October 17, 1973 a thirty-day option agreement gave Rohm and Haas the right to acquire the assets or stock of Polaris, subject to unanimous approval of Polaris' stockholders. Because the Polaris shareholders would not approve this acquisition, a second agreement as to assets only was entered into between Kemos, a wholly-owned subsidiary of Rohm and Haas, and Polaris. This agreement provided that Kemos would purchase for cash most of the assets of Polaris and would assume only certain liabilities shown in the attached balance sheet of November 30, 1973. It specifically stated, however, that Kemos would not acquire any interest in the patent litigation being handled by Bader and excluded any liability for attorney's fees due Bader in excess of those shown on the balance sheet. The November 30 balance sheet showed a liability of $2,760 for legal fees.

On December 10, 1973 the purchase was effected.

Following this purchase of assets by Kemos, Bader sought to enforce his stock option agreement with Polaris against Kemos and Rohm and Haas. They filed this suit to resolve the issue by declaratory judgment.

Bader contends that he is entitled to a pro rata option to purchase shares of Kemos. He asserts that the stock option agreement phrase "consolidated, amalgamated or merged company" was intended to cover a transaction such as this. Because the asset agreement transferred the "assets of POLARIS, as a going concern, the name POLARIS and good will," the substance of the transaction was, in effect, a continuation of Polaris' business according to Bader, and his option was effective against the transferee. He claims that the sole purpose of the form of the transaction was to deprive him of the advantage of his option agreement.

As a general rule, when one corporation purchases the assets of another corporation, it assumes only those obligations that it expressly contracts to assume. *Mobley v. Hagedorn Construction Co.*, 168 Ga. 385, 147 S.E. 890, 893–894 (1929); *Carswell v. National Exchange Bank*, 165 Ga. 351, 140 S.E. 755 (1927); 15 Fletcher Cyclopedia Corporations § 7122 (perm.ed.1973). This rule is subject to exception when the sale is for inadequate consideration, when it defrauds creditors, or when the sale constitutes a formal merger or mere change in form without a change in ownership. *W. E. Austin Co. v. T. L. Smith Co.*, 138 Ga. 651, 75 S.E. 1048 (1912); 6A Fletcher Cyclopedia Corporations § 2949.8 (perm.ed.1968).

Bader does not dispute that the sale was for adequate consideration, and the evidence fails to indicate that plaintiffs defrauded defendant. Bader continued to retain all of his rights against Polaris. The asset agreement specifically referred to the November 30 balance sheet which limited Kemos' liability to $2,760 for legal fees. The sale was neither a merger nor a mere change in form, even though Polaris was transferred "as a going concern," in that Polaris remained an existing corporation, and no shares of Kemos stock were ever transferred to the Polaris shareholders. Kemos assumed only those liabilities which it specifically contracted to assume.

The sale of assets was not specifically encompassed by the terms of the stock option agreement, which expressly covered only consolidations, amalgamations, or mergers. A consolidation is the union of two or more corporations into one corporate body, after which the constituent corporations cease to exist, *see* Ga.Code Ann. § 22-1001 (1970); a merger is the absorption of one corporation into another, *see* Ga.Code Ann. § 22-1002 (1970); and an amalgamation is merely the English term used to designate a consolidation or merger. 15 Fletcher Cyclopedia Corporations § 7042 (perm.ed.1973). None of these terms apply to the transaction in question where both Polaris and Kemos remained in existence after the transfer.

We have carefully reviewed defendant's assignments of error and find them to be without merit. The district judge properly granted summary judgment for plaintiffs in that the pleadings and affidavits showed that there was no genuine issue as to any material fact and that the plaintiffs were entitled to a judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.

In affirming the district court's grant of summary judgment, we note that the court declared plaintiffs to have no obligation to defendant in excess of defendant's expenses incurred prior to the sale of assets. Plaintiffs conceded in their complaint and in oral argument that they have an outstanding liability for these expenses. Thus our affirmance is based on an understanding that plaintiffs will reimburse defendant for his expenses, upon his submission of proper invoices, up to $2,760.

AFFIRMED.