Curtis CHEEVES, et al., Theodore Gibson, et al., Plaintiffs,

v.

SOUTHERN CLAYS, INC., et al., Defendants.

Civ. A. Nos. 86–43–1–MAC (WDO), 86–44–2–MAC (WDO).

United States District Court, M.D. Georgia, Macon Division.

Oct. 19, 1989.

See also, D.C., 726 F.Supp. 1579.

Franklin R. Nix, Atlanta, Ga., G. Lee Dickens, Jr., Milledgeville, Ga., for plaintiffs.

Richard A. Schneider, Atlanta, Ga., George C. Grant, H. Jerome Strickland, Macon, Ga., for defendants.

### ORDER

OWENS, Chief Judge.

Before the court is plaintiff's motion to compel the production of certain documents from Southern Clays, Inc. (Southern), the Rhode Island Charities Trust (the "Trust"); Engelhard Corporation ("Engelhard"), and George Grant, Southern's former counsel. Although plaintiffs' motion seeks to compel numerous documents from Engelhard, Southern, and the Trust, the court here addresses only those documents in the possession of Engelhard and Southern which relate to the acquisition of the Gibson and Cheeves properties by Southern. A hearing on plaintiffs' motion to compel was held in chambers on September 27, 1989. The court heard oral arguments from the parties regarding Engelhard and Southern's claim that the particular documents sought by plaintiffs are protected by the attorney-client privilege and the work product doctrine. At that time the court instructed counsel for Englehard and Southern to submitt the requested documents to the court for in-camera inspection. Having reviewed the documents submitted, the briefs of the parties and the relevant case law, the court now issues the following order.

### DISCUSSION

Southern and Engelhard produced documents to plaintiffs along with schedules identifying certain documents which were

withheld on the basis of the attorney-client privilege of the work product doctrine. Those schedules included correspodence and work product from the 1950's and 1960's generated between members of the law firm of Martin, Snow, Grant & Napier, then Southern's counsel, and Southern (the "Documents"). Plaintiffs do not contend that the documents are not generally protected by the attorney-client privilege. Plaintiffs here argue that the privilege has been waived by Southern's voluntary disclosure of the documents to Freeport Kaolin Company in 1963 when Freeport acquired the majority of Southern's assets and by Freeport's subsequent disclosure of the documents to Englehard in 1985 when Englehard acquired the assets and business of Freeport.

■ As an initial matter the court notes that the attorney-client privilege is not a favored evidentiary concept in the law since it serves to obscure the truth, and should be construed as narrowly as is consistent with its purpose. *Teachers Insurance & Annuity Ass'n of America v. Shamrock Broadcasting Co. Inc.*, 521 F.Supp. 638, 641 (S.D.N.Y.1981). The purpose of the attorney-client privilege is to promote freedom of consultation between client and lawyer by eliminating the fear of subsequent compelled legal disclosure of confidential communications. *International Tel. & Tel. Corp. v. United Tel. Co. of Florida*, 60 F.R.D. 177 (M.D.Fla.1973), aff'd, 550 F.2d 287 (5th Cir.1977).[1] However, where there has been a disclosure of a privileged communication, there is no justification for retaining the privilege. The general rule is that voluntary disclosure of privileged attorney-client communication constitutes waiver of the privilege as to all other such communications on the same subject matter. *In re Consolidated Litigation Concerning Intern. Harvester's Disp. of Wis. Steel*, 666 F.Supp. 1148 (N.D. Ill.1987). In order to determine whether there has been a waiver of the attorney-client privilege by Southern, the court must examine the facts surrounding the acquisi-

tion of Southern's assets by Freeport and Engelhard's subsequent acquisition of Freeport's assets.

■ Defendants assert that in 1963 Southern was sold to Freeport as a "going concern". Defendants state that all of Southern's assets were sold to Freeport with the exception of kaolin lands in Washington County which were leased to Freeport under a 99–year indenture. Defendants further state that following the sale, all of Southern's employees became Freeport's employees and Southern ceased conducting any business. Finally, defendants contend that Southern's records, including those in dispute here, became Freeport's records in connection with the sale. Therefore, Freeport and Engelhard are Southern's successors in interest and there has been no waiver of the attorney-client privilege by Southern in disclosing the documents relating to the acquisition of the Cheeves and Gibson properties to Freeport and Engelhard.

On the other hand, plaintiffs argue that Southern, Freeport and Engelhard do not share the identical legal interest necessary to bar waiver of Southern's attorney-client and work product privileges by its surrender of privileged documents to Freeport and Engelhard. Plaintiffs contend that Southern's disclosure of the documents in question occurred in the context of a solely commercial adverse business relationship and did not serve any legal interest as co-defendants, joint clients or communications among commonly controlled or related corporate entities. Plaintiffs assert that after Southern's partial asset sale the interests of Southern and the Rhode Island Charities Trust as to Freeport were not legal or identical, but rather strictly adverse and commercial in nature.

In *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719 (5th Cir.1985), the Fifth Circuit Court of Appeals held that the attorney-client privilege is not waived if a privileged communication is shared with a third person who has a common *legal interest* with respect to the subject matter of

---

1. This case was decided prior to the close of business on September 30, 1981, and is binding

precedent under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

the communication. *Id* at 721. It is not necessary, however, that the corporations be related, nor is it necessary that both entities be parties to the litigation. The key factor in establishing a community of interest is that the nature of the interest be identical, not similar, and be legal, not solely commercial. *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1172 (D.S. C.1975).

The fact that there might be an overlap of a commercial and a legal interest for a third party does not negate the effect of the legal interest in establishing a community of interest. *Id.*

*Duplan* involved corporately related co-defendants involved in the joint defense of patent and antitrust litigation. The district court found no waiver of the attorney-client privilege as to communications among the corporately related co-defendants. However, as to privileged communications shared with an unrelated non-defendant licensee of the co-defendants the court found that there had been a waiver of the attorney-client privilege because the licensee shared only a commercial and not a legal interest with the co-defendants. *Id.* at 1175.

All parties agree that there was technically no merger between Southern and Freeport in 1963 when Freeport purchased the assets of Southern. However, Southern and Engelhard argue that the situation in the instant case is analogous to a de facto merger for the purpose of a privilege analysis, because Freeport and Engelhard are Southern's successors in interest. The court is not persuaded that the situation in the instant case is analogous to a de facto merger.

In *Howard v. APAC–Georgia Inc.*, 192 Ga.App. 49, 383 S.E.2d 617 (1989), the Court of Appeals of Georgia held that a de facto merger occurs when one corporation is absorbed into another. *Id.* at 50, 383 S.E.2d 617. *See,* OCGA § 14-2-210; *Kemos, Inc. v. Bader,* 545 F.2d 913 (5th Cir. 1977)(applying Georgia law). The court held:

> In order to find a defacto merger, four elements must be present: (1) There is

continuation of the enterprise of the seller corporation, so that there is a continuity of management, personal, physical location, assets, and general business operations; (2) There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation; (3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and (4) The purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

*Id.* 192 Ga.App. at 50–51, 383 S.E.2d 617; *Bud Antle, Inc. v. Eastern Foods, Inc.,* 758 F.2d 1451 (11th Cir.1985). If the corporation sells to another corporation its entire business operation and all its assets, in exchange for some consideration other than stock, the two corporate entities remain distinct and intact. *Howard,* 192 Ga. App. at 51, 383 S.E.2d 617. In the case sub judice, Freeport purchased Southern's assets for consideration other than stock. In a letter to this court dated July 18, 1985, sent by George Grant who represented Freeport in similar litigation involving the same plaintiffs, states that the consideration for the transaction exceeded 13 million dollars. Mr. Grant also states that Freeport did not purchase all or substantially all of Southern's assets and that there never was any identity of ownership between Southern and Freeport. Therefore, the two corporations remained distinct entities. However, as stated *supra,* it is not necessary that the corporations be related or that both entities be parties to the litigation.

Courts have found a community of interest where one party owes a duty to defend another, or where both consult the same attorney.

However, where the communication to a third party (non-party client) of an attorney-client exchange is not based on such a duty or direct transaction between the joint clients of an attorney (that is, a legal interest), but is based rather on the non-party client's interest in a matter involving the prime client and some outsider, the reason for the exception to the normal rule of waiver ceases to exist, and with it, the exception. *Duplan* at 1175.

▋ In the case *sub judice*, neither Freeport or Engelhard were joint clients with Southern at the time the communications in question were made; nor is either a co-defendant in the instant litigation. Furthermore, the disclosure made by Southern to Freeport during Freeport's purchase of Southern's assets was made voluntarily as part of an arms length commercial transaction between parties with adverse interest. Where there is no legal interest (duty or direct transaction between the two clients of the attorney), the mere interest of a non-party client in legal transactions between the prime client and an outsider is not sufficient to prevent a waiver of the attorney-client privilege. *Id.* Thus, the fact that Engelhard has a commercial interest in the transactions in which Southern became the owner of the Cheeves and Gibson properties is not sufficient to prevent a waiver of the attorney-client privilege in the instant case. Moreover, the court finds that the documents in question are not protected by the work product doctrine. The work product doctrine protects those documents which are prepared by an attorney or at his direction in anticipation of litigation. *Clarkson Industries, Inc. v. Price*, 135 Ga.App. 787, 218 S.E.2d 921 (1975) (When the objection goes to the work product exception to general discovery, the party served must show that the material sought was prepared by or for the party in anticipation of litigtion or trial.); *Lowe's of Georgia, Inc. v. Webb*, 180 Ga.App. 755, 350 S.E.2d 292 (1986). The documents which plaintiffs seek to discover were prepared over twenty five years ago and not in anticipation of litigation. Thus they are not protected from disclosure by the work product doctrine.

For the reasons set forth above, the court hereby directs defendants Southern Clays and the Rhode Island Charities Trust, Engelhard Corporation and George Grant, Southern Clays former counsel, to produce those documents requested by plaintiffs which relate to the acquisition of the Cheeves and Gibson properties. As to those documents, plaintiff's motion to compel is GRANTED; as to the other requested documents, the parties should proceed as directed by this court on September 27, 1989.

SO ORDERED.