YOSEMITE INVESTMENT,
INC., Plaintiff,

v.

FLOYD BELL, INC., et al., Defendants.

Civil Action 2:94–CV–719.

United States District Court,
S.D. Ohio,
Eastern Division.

Sept. 20, 1996.

James Michael Wiles, Wiles, Doucher, Van Buren & Boyle, Columbus, OH, Joseph N. Hosteny, Chicago, IL, for Yosemite Inv. Inc.

Jerry Karl Mueller, Jr., Mueller and Smith, Columbus, OH, Frank Henry Foster, Kremblas Foster Millard & Pollick, Reynoldsburg, OH, for Floyd Bell Inc., and Floyd Bell Associates Inc.

## OPINION AND ORDER

KING, United States Magistrate Judge.

This is a patent infringement action in which plaintiff claims that defendants infringed two patents owned by plaintiff. This matter is now before the Court on defendants' motion for an order declaring that its attorney may confer—outside the presence of plaintiff's counsel—with Richard Learn, one of the inventors on one of the two patents at issue in this case, as well as on plaintiff's responsive motion for a protective order prohibiting further *ex parte* contact with Mr. Learn.

The parties agree that Mr. Learn had been an engineering employee of Mallory Capacitor Company and one of two inventors on the '121 patent. His employment with Mallory (or any successor corporation) terminated some years prior to this litigation. Defendants' counsel discussed the facts of the case with Mr. Learn and, on June 2, 1995, included Mr. Learn in its list of experts intended to be used in connection with the defense of this case. Moreover, in September 1995, an affidavit of Mr. Learn was submitted in connection with defendants' request for re-examination of the '121 patent in the U.S. Patent and Trademark Office. In November 1995, plaintiff demanded that defendant not use Mr. Learn as an expert, have no further contact with Mr. Learn, and disclose the substance of all communications with Mr. Learn.

 All parties to this action agree that communications between a patent attorney and an inventor in connection with the preparation of a patent application enjoy the protection of the attorney-client privilege. *Floyd Bell's Memorandum in Reply to Yosemite's Memorandum Opposing Bell's Motion for Declaring Defendants' Right to Communicate with Mr. Learn,* at 2. *Status Time Corp. v. Sharp Electronics Corp.,* 95 F.R.D. 27, 31 (S.D.N.Y.1982). Among the subjects encompassed within the attorney-client privilege in this context are the issues of patentability and the scope of the patent. *See Chore–Time Equipment, Inc. v. Big Dutchman, Inc.,* 255 F.Supp. 1020, 1023

(W.D.Mich.1966). *See also American Standard, Inc. v. Pfizer, Inc.,* 828 F.2d 734, 745–46 (Fed.Cir.1987). Moreover, defendants agree that Mr. Learn participated in privileged communications with the attorney for his employer.[1] Ordinarily, such an employee, whose knowledge is infused with confidential and privileged information, may not be interrogated by an adversary outside the presence of the employer or its counsel. *Camden v. State of Maryland,* 910 F.Supp. 1115, 1121 (D.Md.1996) (and cases cited therein). The purpose of this restriction, of course, is to protect against inadvertent breaches of the attorney-client privilege. *Id.* at 1121–22. This Court concludes that Mr. Learn qualifies as a person who may not be contacted by counsel for his former employer's adversary on an *ex parte* basis.

 However, defendants contend that plaintiff is neither Mr. Learn's former employer nor the holder of the attorney-client privilege in this instance, and therefore has no standing to invoke the attorney-client privilege. According to defendants, plaintiff obtained rights to the '121 patent, not by virtue of the acquisition of any corporate patent holder, but by assignment of the patent. This assignment did not transfer to plaintiff any right to invoke the attorney-client privilege. *See Telectronics Proprietary Limited v. Medtronic, Inc.,* 836 F.2d 1332 (Fed.Cir.1988); *see also In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 89–90 (5th Cir.1976); *SMI Industries Canada Ltd. v. Caelter Industries, Inc.,* 586 F.Supp. 808 (N.D.N.Y.1984). Accordingly, defendants contend that plaintiff has no standing to complain of counsel's contacts with Mr. Learn.

The general rule that the right to assert the attorney-client privilege does not change hands with the bare assignment of assets is based on the notion that the right to assert the attorney-client privilege is an incident of control of the corporation and remains with corporate management as the corporation undergoes mergers, takeovers, name changes or even dissolutions. *Commodity Futures Trading Commission v. Weintraub,* 471 U.S.

---

**1.** The fact that Mr. Learn is no longer employed by Mallory or any of its successors is not, in the estimation of this Court, significant. *See Camden v. State of Maryland,* 910 F.Supp. at 1120.

343, 349, 105 S.Ct. 1986, 1991, 85 L.Ed.2d 372 (1985). Thus, if plaintiff is not the holder of the attorney-client privilege with respect to the '121 patent, it could not ordinarily be heard to assert the privilege.

Plaintiff asserts, in a surprising lack of both documentary evidence and legal clarity,[2] that it is in fact the holder of the attorney-client privilege. Review of the exhibits submitted by plaintiff in support of its cross-motion for a protective order, however, does not support this assertion.

Although plaintiff has not provided a great deal of information in this regard, it appears that Mr. Learn, at the time the '121 patent was issued, was employed by Mallory Capacitor Company, which was apparently wholly owned by Emhart Industries, Inc. Mr. Learn, one of the original patentees, thereafter transferred right to the patent to his employer's owner, Emhart Industries, Inc.

Sometime thereafter, Emhart Industries, Inc. was acquired (or, in plaintiff's terminology, "taken over") by Black & Decker Inc. Exhibit E, (attached to *Yosemite's Cross-Motion for a Protective Order*). Black & Decker apparently created Arcotronics, Inc., a wholly-owned subsidiary, to encompass all of the capacitor business. Arcotronics, Inc. thereafter changed its name, without any corporate restructuring, to U.S. Capacitors, Inc. In 1990, plaintiff acquired "substantially all of [the] business and assets" of U.S. Capacitors, Inc., including rights to the '121 patent, by means of an asset purchase and sale agreement with Black & Decker, Inc. Exhibit F, (attached to *Yosemite's Cross-Motion for a Protective Order*). Plaintiff baldly asserts, without any evidentiary support, that U.S. Capacitors, Inc. "ceased to exist" *Yosemite's Reply Memorandum in Support of its Cross-Motion for a Protective*

*Order*, at 3 (February 12, 1996), after Yosemite's purchase of those assets. However, even the subsequent dissolution of the seller corporation is immaterial. *See, e.g., NCL Corp. v. Lone Star Bldg. Centers (Eastern) Inc.*, 144 B.R. 170, 174 (S.D.Fla.1992). Plaintiff has not persuaded the Court that its purchase of the rights to the '121 patent gave rise to an effective transfer of the attorney-client privilege in connection with those rights.[3] Plaintiff is attempting to assert the attorney-client privilege in this matter. It is therefore incumbent upon plaintiff to establish its right to do so. *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 451 (6th Cir.1983), *cert. denied sub nom. Durant v. United States*, 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984). Based upon the information provided by plaintiff, the Court is unable to conclude that plaintiff is the holder of the attorney-client privilege in connection with the issuance of the '121 patent. Accordingly, this Court concludes that plaintiff has no standing to assert the protections of the privilege.

Plaintiff also argues, however, that, even assuming that the privilege is held by an entity other than it, counsel for defendant has an ethical obligation not to communicate with Mr. Learn without at least obtaining either the privilege holder's permission or advising Mr. Learn of the potential adverse consequences of his cooperation with defendants. DR 7–104 of the Code of Professional Responsibility[4] provides as follows:

During the course of his representation of a client a lawyer shall not:

(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer

---

2. For example, plaintiff states that Emhart Industries, Inc., apparently the original corporate patentholder, was "taken over" by Black & Decker. *Yosemite's Cross-Motion for a Protective Order*, at 12 (January 17, 1996). Yet, plaintiff never articulates whether the "take[ ] over" was by means of a corporate merger or acquisition or by a mere purchase of assets.

3. Moreover, plaintiff does not contend that its purchase of the assets of U.S. Capacitors, Inc., constituted a *de facto* corporate merger. *See,*

*e.g., Cheeves v. Southern Clays, Inc.*, 128 F.R.D. 128, 130–31 (M.D.Ga.1989).

4. The Code of Professional Responsibility in effect on October 5, 1970 has been adopted by the Ohio Supreme Court. Rule IV, § 1 of the Rules for the Government of the Bar of Ohio. It is that code that has been adopted in turn by this Court. *General Order* 81-1 (S.D.Ohio, September 1, 1981).

representing such other party or is authorized by law to do so.

(2) Give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict of the interests of his client.

The Court concludes that defense counsel's contact with Mr. Learn does not constitute a violation of DR 7–104(A)(2) in the absence of any showing whatsoever that Mr. Learn's individual interests are adverse to those of defendants. Whether DR 7–104(A)(1) prohibits counsel's contact with Mr. Learn, however, is a more difficult issue.

The analysis of DR 7–104(A)(1) begins with the identification of the "party" referred to by the rule. In the case of an employee falling, as does Mr. Learn, within the "no contact" zone, the "party" is the organization with which the employee is associated for purposes of the attorney-client privilege. *Johnson v. Cadillac Plastic Group, Inc.,* 930 F.Supp. 1437, 1440 (D.Colo.1996). In this case, that party is the successor to the original holder of the attorney-client privilege. This Court has previously concluded that plaintiff has not carried its burden of establishing its claim to the privilege. While it is not entirely clear who actually holds the privilege, it is clear that, based on the record before the Court, no party actually named in this litigation is the holder of the privilege. The question therefore arises whether the holder of the privilege, whether it be Black & Decker, Inc. or some other corporate entity, is a "party ... know[n] to be represented by a lawyer in that matter...." DR 7–104(A)(1).

An organization need not have actually joined in the litigation to qualify as a "party" for purposes of DR 7–104(A)(1). *Johnson, supra,* 930 F.Supp. at 1440. What the rule does contemplate, however, is "an adversarial relationship between litigants, whether in a criminal or civil setting." *United States v. Ryans,* 903 F.2d 731, 739 (10th Cir.) *cert. denied,* 498 U.S. 855, 111 S.Ct. 152, 112 L.Ed.2d 118 (1990). Even an organization not a named party to the action will nevertheless qualify as a "party" for purposes of the rule if it has specifically retained counsel to represent its interests regarding the matter or has specifically referred the matter to house counsel. *Johnson, supra,* 930 F.Supp. at 1440. There is simply no evidence in the record upon which this Court can conclude that the actual holder of the attorney-client privilege is engaged in an adversarial relationship with defendants, or has either retained counsel or referred the matter to house counsel in connection with this litigation.

Accordingly, this Court concludes that, because plaintiff has failed to establish that it is entitled, through the various transactions giving rise to its succession to rights under the '121 patent, to invoke the attorney-client privilege with respect to the issuance of the patent, the Court concludes that plaintiff has no standing to prevent *ex parte* communications with Mr. Learn by counsel for defendants. Moreover, DR 7–104(A)(1) does not require that defense counsel refrain from communicating, on an *ex parte* basis, with Mr. Learn. Accordingly, and under the particular circumstances presented in this case, plaintiff's motion for a protective order is DENIED and defendants' motion for an order declaring that its attorney may confer with Richard Learn is GRANTED.

If any party seeks reconsideration of this Order, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Opinion and Order, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Rule 72(a), F.R.Civ.Pro.; Eastern Division Order 91–3(I)(F)(5).