Larry C. JOHNSON, Plaintiff,

v.

CADILLAC PLASTIC GROUP, INC., a Michigan corporation, d/b/a Plasticrafts, Inc., Defendant.

Civil Action No. 95–K–1416.

United States District Court, D. Colorado.

June 27, 1996.

Richard C. LaFond, Charlotte N. Sweeney, LaFond & Clausen, L.L.C., Denver, CO, for Plaintiff.

Richard S. Mandelson, Mary Price Birk, Denver, CO, for Defendant.

## ORDER REJECTING RECOMMENDATION OF MAGISTRATE JUDGE

KANE, Senior District Judge.

This matter is before me on the United States Magistrate Judge's Recommendation that a motion in limine filed by defendant Cadillac Plastic Group, Inc. ("Cadillac") be granted. The motion was precipitated when Plaintiff Larry Johnson announced his intention to call Karen Yablonski–Toll, his former attorney, and Paul Trujillo, a Cadillac employee with whom Yablonski–Toll had *ex parte* communications, as witnesses at trial. The motion sought an order in limine striking Yablonski–Toll and Trujillo as witnesses and instructing Johnson and his present counsel to refrain from referring to the communications between Yablonski–Toll and Trujillo. Alternatively, the motion requested a ruling that the attorney-client privilege and the protections of the work-product doctrine had been waived with respect to Yablonski–Toll's representation of Plaintiff in this matter. *See* Def.'s Mot. in Limine & to Strike Certain Witnesses (filed May 3, 1996).

The Magistrate Judge agreed with Cadillac that Yablonski–Toll's *ex parte* communications with Trujillo violated Rule 4.2 of the Colorado Rules of Professional Conduct. *See* Recommendation of United States Magistrate Judge at 3. Finding "[Johnson] should not be allowed to rely on evidence gathered

during the course of an interview conducted in violation of the rule," the Magistrate Judge recommended Cadillac's motion in limine be granted. *Id.*[1]

■ No objections to the Magistrate Judge's recommendation were filed within the ten-day period prescribed in 28 U.S.C. § 636. This does not require that I adopt the recommendation, however, and I decline to do so. *See* 28 U.S.C. § 636(b)(1) (district court judge may accept, reject, or modify, in whole or in part, findings or recommendations of magistrate judge). It is not at all clear to me that Yablonski–Toll's conduct in engaging in an *ex parte* interview with Trujillo violated Rule 4.2. Even if it did, however, the appropriate sanction for unauthorized communications with an adversary's employee would be disciplinary action against the offending attorney, not punishment of the attorney's client by the suppression of otherwise discoverable information.

## I. *FINDINGS OF FACT*

Cadillac eliminated Johnson's Operations Manager position and terminated Johnson on August 17, 1993. Sensing before then that his job was in jeopardy, Plaintiff had contacted Yablonski–Toll in July 1993 to discuss his employment situation. As part of his July 31, 1993 Monthly Report to supervisors Rick Gough and Vern Lentz, Johnson expressed concern over the deterioration of his position and submitted a severance pay proposal. *See* Monthly Report (Def.'s Mot. Limine, Ex. B). The proposal identified Yablonski–Toll as Johnson's attorney, and indicated the proposal was subject to final approval by her. Johnson also provided a copy of his proposal to Frank Titas, a member of Cadillac's in-house legal staff.[2]

Johnson contacted Yablonski–Toll again in early October 1993. They set up a meeting and on October 11, 1993, Johnson formally retained her as counsel. Believing Trujillo might be able to verify certain factual information related to his termination, Johnson contacted Trujillo shortly thereafter. Aware that Yablonski–Toll was representing Johnson with respect to his termination, Trujillo agreed to meet with her. *See* Trujillo Affid. (Def.'s Mot. Limine, Ex. C), ¶¶ 5–6.

Yablonski–Toll interviewed Trujillo on October 18, 1993. Yablonski–Toll was aware Trujillo was a management-level employee of Cadillac, but understood he had no authority to speak or bind Cadillac to any position regarding employment decisions. Yablonski–Toll Affid., ¶ 6. Yablonski–Toll also understood Trujillo had no supervisory authority over Johnson, and was at most his equal or subordinate in Cadillac's organizational hierarchy. *See id.* She did not ask before the interview whether Trujillo had an attorney or wished to have an attorney present. Trujillo Affid., ¶ 7. Yablonski–Toll took notes during Trujillo's interview. Trujillo did not request nor was he offered a copy of the notes after the interview was concluded. *Id.* ¶ 8.

For reasons that cannot be ascertained from the record, Yablonski–Toll never initiated an action on Johnson's behalf. Johnson later retained the law firm of LaFond & Clausen and the instant lawsuit was filed in June 1995, nearly two years after Johnson's

---

1. In an apparent oversight, the Magistrate Judge also recommended Cadillac's "Motion to Strike Certain Witnesses" be denied. *See* Recommendation at 3. Considering that the striking of Yablonski–Toll and Trujillo as witnesses was precisely what Cadillac's motion in limine sought, I assume the Magistrate Judge meant to grant the motion to strike and deny as moot Cadillac's alternative request for an order stating any attorney-client privilege between Yablonski–Toll and Johnson had been waived.

2. Yablonski–Toll contends she had not been retained by Johnson at that time and states she cautioned Johnson against representing her as such in his severance negotiations. Yablonski–Toll Affid. (attached as Ex. 2, Pl.'s Resp.Mot.Li-mine). With respect to the copying of the proposal to Titas, Johnson maintains he did so as a "matter of personal courtesy," and not to alert him to or threaten Cadillac with legal action. Johnson Affid. (attached as Ex. 1, Pl.'s Resp.Mot.Limine), ¶¶ 4–5. Johnson maintains he considered Titas a friend, and that he wanted to inform Titas of "what [his] feelings were concerning the deterioration of [his] position." *Id.* ¶ 5. The proposal, however, clearly signalled to Cadillac that legal action was being contemplated, going so far as to state that once a severance package was agreed upon, Johnson "would sign releases concerning any and all legal actions that are in the process or being contemplated." Monthly Report (Def.'s Mot.Limine, Ex. B) at 2.

termination and more than 1½ years after the Trujillo interview.

Equivocations in the deposition testimony of Lentz and Trujillo in the spring of 1996 triggered renewed interest in the Yablonski–Toll/Trujillo interview. Johnson, through his new counsel, contacted Yablonski–Toll in March 1996 and learned for the first time that she had taken notes of the October 1993 meeting. Johnson requested a copy of the notes, and in April announced his intention to call both Yablonski–Toll and Trujillo as witnesses. This motion in limine ensued.

## II. *CONCLUSIONS OF LAW*

■ District courts have an "obligation to take measures against unethical conduct occurring in any proceeding." *FDIC v. Sierra Resources, Inc.*, 682 F.Supp. 1167, 1170 (D.Colo.1987). To guide its performance of this obligation, the District of Colorado has adopted the Colorado Code of Professional Responsibility. D.C.COLO.LR 83.6. Ethics opinions of the Colorado Bar Association (the "CBA") interpreting the Colorado Code are advisory, but may be considered in resolving allegations of unethical conduct.

Rule 4.2 of the Colorado Rules of Professional Conduct provides that

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

The Rule is substantively identical to Disciplinary Rule 7–104(A)(1) of the Model Code of Professional Responsibility, and has been adopted in similar form in numerous other jurisdictions.[3] The CBA Ethics Committee published a formal opinion on the scope of DR 7–104(A)(1) in 1987, *see* CBA Revised Ethics Opinion No. 69: Communicating With the Employee or Former Employee of an Adverse Party Organization (reprinted at 16 Colo.Law. 1429 (Aug. 1987)), which opinion provides guidance in this case.[4]

Revised 69 acknowledges and attempts to resolve the conflict between "one's right to receive and be protected by the advice of one's attorney and a client's interest in a quick and inexpensive exploration of a potential legal claim." 23 Colo.Law. at 1429. In doing so, Revised 69 breaks the Rule into five parts: (1) "Communication"; (2) "Subject of the Representation"; (3) "Party"; (4) "Knows" to be represented; and (5) "Authorized by law" to communicate without prior consent. A determination of whether Cadillac and Trujillo were "parties" within the meaning of Rule 4.2 in October 1993 lies at the heart of the present dispute.

### A. *Was Cadillac a "Party" in October 1993?*

■ In determining whether an organizational employee is a "party," Revised 69 instructs that one must first determine whether the organization is a "party" and then determine whether the employee should also be considered a "party" or merely a "bystander witness." 23 Colo.Law at 1430. Reasoning that the perceived potential for harm to the attorney-client relationship underlying the Rule is not dependent on the existence of a civil action, Revised 69 states an organization does not need to be named in litigation to be a "party." *Id.* "[An] organization should be considered a party anytime it has specifically retained counsel to represent its interests regarding the subject of representation or has specifically referred the matter to house counsel." *Id.* (citing the American Bar Association (ABA) Model Rules of Professional Conduct, Rule 4.2 comment (1980)). Even if it is determined that an organization is a party, its employees will not be considered as such unless they are in a position to commit or bind the organization on the subject of the representation.

Cadillac urges a broad interpretation of the "specifically retained" or "referred" language in the ABA comment. It argues the reference to potential litigation in Johnson's July 1993 Monthly Report and severance

---

**3.** For purposes of this Order, I will refer to Rule 4.2 and DR 7–104(A) interchangeably as "the Rule."

**4.** The Magistrate Judge in this case looked to the CBA's Ethics Opinion 93 to evaluate the alleged

impropriety of the Yablonski–Toll/Trujillo communications. Ethics Opinion 93 supplements Opinion 69, and applies to *ex parte* contacts with government, not private, employees. As such, it does not apply to the situation presented.

proposal, together with the fact Johnson sent a copy of the report to Titas, rendered both Cadillac and Trujillo "parties" under Rule 4.2 and triggered its no-contact provisions. Because Trujillo was a management level employee of Cadillac at the time of the 1993 interview, Cadillac maintains he, too, was a "party" with whom *ex parte* contact was forbidden. I disagree. Countervailing policies militate against Cadillac's interpretation of Rule 4.2 in this case.

■ I agree an organization or business entity may be a "party" under the Rule before litigation formally commences. That does not mean, however, that a corporation is immune from legitimate informal fact-gathering processes as soon as an employee notifies it that he is unhappy and has consulted counsel. An interpretation of Rule 4.2 that limits counsel to (and burdens their clients with the costs of) formal discovery during the investigatory stages of civil litigation is not only fundamentally unfair, but also frustrates the purposes of Rule 11, Fed.R.Civ.P.

A recent decision by the District of Utah is directly on point. Considering Utah's identical Rule 4.2, the court in *Weider Sports Equipment Co., Ltd. v. Fitness First, Inc.,* held the Rule's no-contact provisions did not attach during the investigatory stages of a civil proceeding. 912 F.Supp. 502, 508–509 (D.Utah 1996) (citing *United States v. Ryans,* 903 F.2d 731 (10th Cir.1990)).[5] Recognizing that Rule 11 prohibits attorneys from filing a complaint without first making "reasonable inquiry" into whether its factual allegations have evidentiary support, the court held the "broad construction" of Rule 4.2 urged by the defendant in that case was incompatible with Rule 11 and therefore "irresponsible." 912 F.Supp. at 508. Such a construction, the court stated, would transform the Rule from "a matter of ethics" to "a rule of political and economic power that shelters ... business organizations from the legitimate less costly inquiry and fact gathering process sometimes

necessary to make a legitimate assessment of whether a valid claim for relief exists." *Id.* at 508, 509. Rule 4.2, it concluded, should be held applicable only after litigation has been commenced. *Id.* at 509.

As previously stated, the CBA Ethics Committee does not require one to have been formally named a "party" to litigation before being afforded the protections of the Rule and I see no need to interpret the Rule as narrowly as the *Weider* court. The reasoning in *Weider* supports a conclusion consistent both with Revised 69 and the Tenth Circuit's decision in *Ryans,* namely, that the protections of Rule 4.2 attach only once an "adversarial relationship" sufficient to trigger an organization's right to counsel arises. Under the facts of this case, Cadillac was not a "party" for the purposes of Rule 4.2 in October 1993.

### B. *Trujillo*

■ Even if Cadillac had been a "party" for the purposes of Rule 4.2 in October 1993, Yablonski–Toll's contacts with Trujillo were not subject to its provisions unless he, too, could be considered a "party." The comment to ABA model Rule 4.2 states the Rule prohibits contact "with persons having managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for the purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization." The Magistrate Judge relied on the ABA comment and found Trujillo was a "party" solely because he was a management level employee of Cadillac. Recommendation at 2. The Magistrate Judge rejected Johnson's assertion that not all managerial employees are parties was rejected as "inconsistent with the plain meaning of the comment." *Id.* This was incorrect.

---

5. Applying Rule 4.2 in a criminal case, the Tenth Circuit in *Ryans* found the Rule "contemplate[s] an adversarial relationship between litigants, whether in a criminal or civil setting." 903 F.2d at 739. The court reasoned "the contours of the 'subject matter of the representation' are uncertain during the investigative stage of the case, and therefore less susceptible to the damage of

'artful' legal questions which the disciplinary rule is designed in part to avoid." *Id.* (agreeing with the District of Columbia Circuit in *United States v. Lemonakis,* 485 F.2d 941, 955–56 (D.C.Cir.1973) and disagreeing with the contrary conclusion reached by the Second Circuit in *United States v. Hammad,* 858 F.2d 834 (2d Cir. 1988)).

The ABA comment has been roundly criticized by courts and commentators alike, *see Weider*, 912 F.Supp. at 508–09 (and citations therein), and the CBA Ethics Committee has declined to interpret it expansively. Contrary to the Magistrate Judge's finding, Revised 69 specifically states "not all managerial employees are 'parties.'" *See* 29 Colo. Law. at 1430. "The protection of [the Rule]," it explains, "is limited to those managerial employees with authority to commit the organization to a position regarding the subject matter of representation." *Id.* Examples of the types of employees capable of committing an organization are those "whose duties include making litigation decisions" or "answering the type of inquiries posed." *Id.* Neither Trujillo's affidavit nor any other evidence in the record establishes that Trujillo was such an employee.

Revised 69's narrow reading of the ABA comment ensures that Rule 4.2 remains a rule of ethics, rather than of corporate immunity. Again, I refer to the District of Utah's opinion in *Weider*. There, the district court rejected an expansive reading of the comment, finding the status of the employee must be "more directly associated with the legitimate attorney/client needs of the corporation before Rule 4.2 should be operative." 912 F.Supp. at 509. The comment, the court stated, is "a throwback to an era in which corporations could completely dominate and control their employees in a litigation matter." *Id.* It stifles the truth-seeking function of courts and "treats corporate employees as a form of company property." *Id.*

'If [an] employee [who is not authorized to commit the organization on the matter of representation] has information adverse to corporate policy or practice which is at issue in any litigation, the employee must be free to speak and the courts should have access to the evidence. Any concept of ethics which is to the contrary must be premised on a very special justification. The admissions restriction portion of the comments to Rule 4.2 of the ABA Model Rules of Professional Conduct is not supported by such justification.'

*Id.* (quoting *Bouge v. Smith's Mgt. Corp.*, 132 F.R.D. 560, 566 (D.Utah 1990)). I agree, and conclude the fact Trujillo was a management level employee alone does not make him a "party" for the purposes of Rule 4.2.

## C. *Remedy*

Regardless of whether Cadillac and Trujillo were "parties" for the purposes of Rule 4.2, the exclusion of evidence would be an inappropriate remedy for Yablonski–Toll's conduct. An exclusionary policy frustrates truth and does not punish the ethical violation. Instead, it works against the client who may have been wronged by the opposing party as far as the substantive claim is concerned. *See Weider*, 912 F.Supp. at 509 (citing *United States v. Dennis*, 843 F.2d 652 (2d Cir.1988) and *United States v. Thomas*, 474 F.2d 110, 112 (10th Cir.1973)). "An ethical violation ought to be dealt with by sanctions against the errant attorney, except in special cases." *Id.*

An exclusionary rule is an indirect sanction that sacrifices truth on the alter of advocacy rather than a more functional approach of imposing a direct sanction on the errant attorneys. It leads to excessive quibbling, tactical maneuvering and possible frustration of justice.

*Weider*, 912 F.Supp. at 511.

As was the case in *Weider*, different counsel from that which is accused of unethical conduct are now involved in this case. *See id.* If Yablonski–Toll engaged in ethical violations in 1993 before this litigation commenced, those violations should have been brought to the proper authorities and dealt with directly. Their use in this case is clearly tactical in nature and inappropriate.

## III. *CONCLUSION*

The Recommendation of the Magistrate Judge is REJECTED and Cadillac's motion in limine DENIED. I decline at this time to rule on issues of privilege and waiver as premature.