Dena PALMER, Plaintiff,

v.

The PIONEER HOTEL & CASINO,
et al., Defendants.

No. CV–N–97–399 DWH(PHA).

United States District Court,
D. Nevada.

Aug. 28, 1998.

Ian E. Silverberg, Reno, NV, for Plaintiff.

Miranda Du, McDonald Carano Wilson McCure Bergin Frankovich & Hicks, Reno, NV, for Defendants.

### ORDER

HAGEN, District Judge.

Before the court is the magistrate judge's comprehensive and well-reasoned recommendation (# 39) on defendant Pioneer's motion (# 24) to disqualify plaintiff's counsel. Plaintiff has objected, raising two points: one, that the magistrate judge erred in her analysis and application of SCR 182 and two, that her sanction was excessive. On *de novo* review (28 U.S.C. § 636(b)(1)), the court finds (1) she correctly applied SCR 182 to the conduct of plaintiff's counsel and (2) the sanction imposed was fair. The recommendation is accepted in whole. Pioneer is directed forthwith to comply with the directive contained at page 27 of the recommendation.

**IT IS SO ORDERED.**

### ORDER

ATKINS, United States Magistrate Judge.

May 11, 1998.

Before the Court is Defendant Pioneer Inn Associates, Ltd.'s ("Pioneer") motion to disqualify (Dkt.# 24) Plaintiff's counsel, Ian Silverberg, for engaging in improper ex parte communications with Pioneer employees. Plaintiff has filed an opposition and a request for sanctions (Dkt.# 28) to which Pioneer has filed a reply (Dkt.# 29). Oral argument was heard April 13, 1998. For the reasons expressed below, Pioneer's motion is granted in part and denied in part; Plaintiff's request for sanctions is denied.

## I.

### BACKGROUND

Plaintiff filed this employment discrimination suit in July 1997, asserting a claim for relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and two pendent state law claims for relief. Plaintiff alleges that, in January 1997, while six months pregnant, she was hired by Greg Zamora, the food and beverage director of the Pioneer Inn Hotel & Casino ("Pioneer Hotel"), to work as a "floater waitress" and a "food preparer" in the Pioneer Hotel. Before beginning that work, however, Plaintiff accepted an offer by Zamora to work as a coffee shop supervisor in the Pioneer Hotel. After arriving at the Pioneer Hotel to begin her employment on February 3, 1997, Plaintiff was informed by Zamora that Guy Archer, a Pioneer Hotel co-general manager, had, because of her pregnancy, overridden Zamora's decision to hire her.

By letter dated February 27, 1997, Silverberg informed Pioneer that he had been retained by Plaintiff to "pursue a claim of gender discrimination." Def.'s Mot. to Disqualify (Dkt.# 24), Ex. 1. Silverberg further indicated that he was "in the process of preparing a formal complaint against [Pioneer]." *Id.* On March 4, 1997, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Also on that date, Silverberg was informed by counsel for Pioneer, Pat Lundvall, that her firm was representing Pioneer and that she was aware of Silverberg's February 27 letter.

In its motion to disqualify, Pioneer contends that Silverberg improperly communicated ex parte with George Kapetanakis (Pioneer Hotel executive sous chef); Sarah Favero (Pioneer Hotel on-call banquet employee); Jennifer Walker (Pioneer Hotel PBX operator); and Donna Lorentz (former Pioneer Hotel supervisor). These communications transpired as follows.

In April 1997, Kapetanakis, apparently after speaking with Favero about Plaintiff's claims against Pioneer, contacted Silverberg at his office and signed an affidavit prepared by Silverberg, stating: "During the month of January, 1997, I witnesses [sic] Mr. Greg Zamora interviewing ... [Plaintiff].... I inquired of Mr. Zamora whether he intended to hire [Plaintiff] at which time Mr. Zamora told me that he had already hired her." Aff. of Kapetanakis at ¶¶ 2–3, appended to Def.'s Mot. to Disqualify (Dkt.# 24), Ex. 3. Kapetanakis stated during his deposition that nothing else was discussed with Silverberg.

The circumstances surrounding Silverberg's communications with Favero are not as well-defined. The only evidence establishing that an ex parte communication occurred is an affidavit executed by Favero on March 17, 1997, stating that Zamora told her that he had hired Plaintiff.

Likewise, the extent of Silverberg's ex parte communications with Walker are not altogether clear. On April 17, 1997, Walker executed an affidavit repeating the same information contained in the Kapetanakis and Favero affidavits. Pioneer indicates that, as of that date, Walker was no longer employed at the Pioneer Hotel. Plaintiff, however, in her opposition brief, states that Silverberg did communicate ex parte with Walker while she was employed. It thus appears that ex parte communications may have occurred both during and after her employment at the Pioneer Hotel.

Finally, as to Donna Lorentz, Plaintiff states that Silverberg contacted Lorentz by telephone and was informed that, although she did not work at the Pioneer Hotel when Plaintiff applied for employment, she (Lorentz) was aware of "prior discriminatory practices by agents" of Pioneer. Pl.'s Opp'n at 7 (Dkt.# 28).[1]

## II.

### *DISCUSSION*

This Court has, through Rule IA 10–7(a) of the Local Rules of Practice, adopted the Model Rules of Professional Conduct as they, in turn, have been adopted and amended by the Nevada Supreme Court. Relevant to this litigation is Nevada Supreme Court Rule 182 (taken from the original version of Model Rule 4.2):

> In representing a client, a lawyer shall not communicate about the subject of the representation with a *party* the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

SCR 182 (emphasis added). The purposes underlying this rule include (1) preventing attorneys from exploiting the disparity in legal skills between attorney and lay person; (2) preserving the integrity of the attorney-client relationship; (3) preventing the inadvertent disclosure of privileged information; and (4) facilitating settlement by channeling disputes through lawyers accustomed to the negotiation process. *Kole v. Loyola Univ. of Chicago*, No. 95 C 1223, 1997 WL 47454, at * 4 (N.D.Ill. Jan. 30, 1997); *Terra Int'l. Inc. v. Mississippi Chem. Corp.*, 913 F.Supp. 1306, 1314 (N.D.Iowa 1996).

This simple prohibition on ex parte communications rises to a higher level of complexity when communications with an organization's employees are involved. The process for determining whether an organization's employee is a "party" for purposes of the ethical prohibition varies widely. *See* Ernest F. Lidge III, *The Ethics of Communicating with an Organization's*

---

1. Pioneer contradicts Plaintiff by stating in its motion that Lorentz has been employed by Pioneer "through 1998"; however, the purported support for that statement is not located at the cite provided by Pioneer to the Court. Bearing in mind that the burden on a motion to disqualify rests with the movant, *Sequa Corp. v. Lititech, Inc.*, 807 F.Supp. 653, 659 (D.Colo.1992), the Court will defer to Plaintiff's characterization of Lorentz's employment dates.

*Employees: An Analysis of the Unworkable "Hybrid" or "Multifactor" Managing–Speaking Agent, ABA, and Niesig Tests and a Proposal for a "Supervisor" Standard,* 45 Ark.L.Rev. 801 (1993). Neither the Ninth Circuit nor this Court has had the occasion to discuss which process is desirable. The Nevada Supreme Court, though, in *Cronin v. Eighth Judicial District Court,* 105 Nev. 635, 781 P.2d 1150 (1989), has addressed the topic.

There, in the course of representing a husband and wife who had been the victims of a crime in a Las Vegas hotel, an attorney engaged in repeated and pervasive ex parte communications with the hotel's director of security, director of human resources, and chief of uniformed security. *Id.* at 636–38, 781 P.2d at 1151–52. In finding that these three employees were "parties" for purposes of Supreme Court Rule 182, the court referenced Comment 2 to Model Rule 4.2.[2] That Comment lists three categories of employees that are covered as "parties": (1) an employee having managerial responsibility on behalf of the organization; (2) an employee whose act or omission in connection with the matter in representation may be imputed to the organization for purposes of civil or criminal liability; and (3) an employee whose statement may constitute an admission on the part of the organization. *Id.* at 640, 781 P.2d at 1153.

The *Cronin* court held that the ex parte communications were violative of Supreme Court Rule 182 because the hotel's employees were high-ranking management level employees. *Id.* at 641, 781 P.2d at 1154. In doing so, the court rejected the attorney's argument that the employees were merely "non-speaking/managing" employees beyond the purview of Supreme Court Rule 182. *Id.* The court did not, however, make clear whether it was grafting the "managing-speaking agent" test developed in *Wright by Wright v. Group Health Hosp.,* 103 Wash.2d 192, 691 P.2d 564, 569 (1984), onto category one of the Comment test; whether it was stating that the attorney's conduct was violative of both tests, thereby implying that both tests are viable in Nevada; or whether it was simply emphasizing that the employees had managerial responsibilities on behalf of the organization.

Under the *Wright* court's "managing-speaking agent" test, only organizational employees who have the legal authority to bind the organization "in a legal evidentiary sense, i.e., those employees who have 'speaking authority' for the" organization, are off-limits to attorneys seeking unapproved ex parte communications. *Id.* 691 P.2d at 569; *see also id.* 691 P.2d at 570 (stating that an employee has the authority to bind an organization when the employee is ultimately responsible for managing the organization's operations with the ability to speak and act for the organization and settle controversies on its behalf). The court explained that the "test has its roots in agency and evidence law." *Id.*

In formulating its test, the *Wright* court expressly refused to incorporate situations in which an employee's act or omission may have caused the event leading to the litigation. *Id.* 691 P.2d at 569. This fact presents an additional problem with the *Cronin* court's uncertain use of the "managing-speaking agent" test, in that the Comment test bars ex parte communications with an employee "whose act or omission in connection with [the matter in representation] may be imputed to the organization for purposes of civil or criminal liability." Model Rules of Professional Conduct Rule 4.2 cmt. (1983 & 1995 amendment). Thus, the Comment test and the "managing-speaking agent" test are, to an extent, contradictory.[3]

---

**2.** Model Rule 4.2 and its Comment were amended in 1995. Annotated Model Rules of Professional Conduct 580 (3d ed.1996). The "Comment 2" referenced in *Cronin* has been moved to the fourth paragraph of the Comment. All further references in this order to pre-amendment Comment 2 and post-amendment Comment 4 shall be without the paragraph designation.

**3.** *Cronin* is not the only case in which these partially contradictory tests have been joined. In *Chancellor v. Boeing Co.,* Judge Crow stated: "Persuaded by the rationale behind the [*Wright*] managing-speaking agent test, the court herein adopts it and the official comment to ABA Model Rule 4.2, as the definition of 'party'...." 678 F.Supp. 250, 253 (D.Kan.1988) (emphasis added). In applying this formulation of "party,"

Moreover, in *Cronin,* the Nevada Supreme Court did not discuss the second and third categories of the Comment test. Consequently, the precise import of those categories in Nevada remains unsettled.

■ Against this murky legal backdrop, the Court turns to the case at bar. In order to prevail on a motion to disqualify opposing counsel, the moving party must first establish by a reasonable possibility that some identifiable ethical violation occurred. *Cronin,* 105 Nev. at 641, 781 P.2d at 1153. If an ethics violation is established, the court then has broad discretion in determining whether disqualification, or some lesser sanction, is warranted. *In re Air Crash Disaster Near Roselawn, Ind.,* 909 F.Supp. 1116, 1124 (N.D.Ill.1995); *Faison v. Thornton,* 863 F.Supp. 1204, 1215 (D.Nev.1993); *Cronin,* 105 Nev. at 640, 781 P.2d at 1153. Where disqualification is contemplated, "any doubt is resolved in favor of disqualification." *Faison,* 863 F.Supp. at 1216 (citing *Cronin,* 105 Nev. at 640, 781 P.2d at 1153). "At the same time, however, the [C]ourt views disqualification as an extreme sanction," *Brown v. St. Joseph County,* 148 F.R.D. 246, 255 (N.D.Ind.1993), to be imposed only after a careful consideration of the client's right to be represented by the counsel of her choice, and the nature and extent of the ethics violation, *Faison,* 863 F.Supp. at 1217.

## A. *Possibility of an Ethics Violation*

■ In the interest of creating a single, cohesive, and predictable approach to attorney ethics in Nevada federal and state courts, this Court feels compelled to apply the tests identified and applied in *Cronin.* See *Weider Sports Equip. Co., Ltd. v. Fitness First, Inc.,* 912 F.Supp. 502, 510 (D.Utah 1996) (observing the potential quandary fac-

ing attorneys when federal courts located in a particular state promulgate ethics standards different from those adopted by the state's highest court).[4] Accordingly, where, as here, ex parte communications with an organization's employees are at issue, the Court holds that the proper test for utilization in this district is that established by the American Bar Association in the Comment to Model Rule 4.2.

■ The Court further holds that, when determining, under the first category of the Comment test, whether an employee has managerial responsibility on behalf of the organization, resort should be had to the "managing-speaking agent" test developed in *Wright.* This appears to be the most sound reading of *Cronin* for several reasons. First, the parameters of the term "managerial responsibility" are unclear. *Compare Carter-Herman v. City of Philadelphia,* 897 F.Supp. 899, 903–04 (E.D.Pa.1995) (finding that police captains and lieutenants have managerial responsibility because they "exercise significant individual judgment and discretion outside of established policies and procedures," but that police sergeants do not have managerial responsibility, even though they supervise others, because their work is guided by departmental rules and regulations) *and Orlowski v. Dominick's Finer Foods, Inc.,* 937 F.Supp. 723, 728 (N.D.Ill.1996) (holding that hiring, scheduling work shifts, and recommending terminations are managerial responsibilities) *with Terra Int'l. Inc.,* 913 F.Supp. at 1321 (precluding ex parte contacts with shipping department supervisor with authority over seven employees) *and Berryman v. Consolidated Rail Corp.,* Civ.A. No. 94–3668, 1995 WL 517642, at *2 (E.D.Pa. Aug. 28, 1995) (finding, in conclusory dicta, that plaintiff's foreman had managerial responsibility). By

Judge Crow then simply prohibited all ex parte interviews with "employees having managerial responsibility" and "employees who may have been involved in the denial of promotions at issue in any way that their actions as agents may be imputed to [the] defendant corporation for purposes of civil liability." *Id.* Nowhere in Judge Crow's opinion, however, is there an explicit application of the "managing-speaking agent" test to the former group of employees, or

a recognition that the latter group is exempt from the test.

4. Plaintiff contends that the *Cronin* court "did not set forth the test it applied to determine whether" an ethical violation occurred. Pl.'s Opp'n at 2 (Dkt.# 28). The Court does not agree. As discussed earlier, two tests were referenced—the Model Rule 4.2 Comment test and the *Wright* "managing-speaking agent" test—and applied, although in an uncertain manner.

defining the term as the "legal authority to 'bind'" the organization, *Wright*, 691 P.2d at 569, it becomes unnecessary to determine how far into the lower levels of the organizational hierarchy the term should extend. Second, a restrictive definition is responsive to the "need of the adverse attorney for information which may be in the exclusive possession of the [organization] and may be too expensive or impractical to collect through formal discovery." *Frey v. Dep't of Health & Human Serv.*, 106 F.R.D. 32, 37 (E.D.N.Y.1985) (quotation omitted). *Accord Brown*, 148 F.R.D. at 253 (observing, in regard to current organizational employees, that "courts, commentators and bar associations have struggled to fashion an anti-contact rule which strikes an appropriate balance between the interests of the corporation and the need of adverse parties to conduct inexpensive informal discovery"). This policy consideration is especially compelling in the context of employment discrimination suits given that evidence of discrimination often rests entirely with the organization's employees. Felicia R. Reid, Comment, *Ethical Limitations on Investigating Employment Discrimination Claims: The Prohibition on Ex Parte Contact with a Defendant's Employees*, 24 U.C. Davis L.Rev. 1243, 1257–64 (1991).

At least one other court has circumscribed the definition of "persons having managerial responsibility" in order to "ensure[ ] that Rule 4.2 remains a rule of ethics, rather than of [organizational] immunity." *Johnson v. Cadillac Plastic Group, Inc.*, 930 F.Supp. 1437, 1442 (D.Colo.1996).[5] The *Johnson* court explained that an expansive reading of the Comment test was not "directly associated with the legitimate attorney/client needs of the [organization]." *Id.* (quotation omitted). In this regard, the court observed that

the Colorado Bar Association had wisely limited the definition of "managerial employees" to those "employees with authority to commit the organization to a position regarding the subject matter of representation." *Id.* (quotation omitted).[6] This limitation mirrors the "managing-speaking agent" test developed in *Wright*, which proscribes unapproved ex parte communications with employees possessing the legal authority to bind the organization, and lessens the conflict between the need for informal, inexpensive discovery on the one hand, and an organization's interest in protecting the integrity of the attorney-client relationship and preventing the inadvertent disclosure of privileged information on the other hand.

Regarding the second and third categories of the Comment test, the Court does not believe that their applicability undermines the balance struck above between the conflicting interests of adverse counsel and an organization. As the Supreme Court recognized in *Upjohn Co. v. United States*, the attorney-client privilege extends beyond the limits of an organization's control group so as to cover privileged communications with mid-level and even lower-level organizational employees. 449 U.S. 383, 391, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Because of the likelihood that an organization's counsel will have communicated with employees whose acts or omissions in connection with the matter may be imputed to the organization, or whose statements may constitute an admission on the part of the organization, it is not unreasonable to prospectively prohibit unapproved ex parte communications between such employees and adverse counsel. At the same time, however, the latter two categories of the Comment test permit ex parte communications with employees who have merely wit-

---

5. Because Judge Crow in *Chancellor* neither noted the conflict between the *Wright* test and the Comment test, nor clearly applied the *Wright* test, *see supra* note 3, this Court is reluctant to say that *Chancellor* exemplifies a limitation on the definition of "employees having managerial responsibility."

6. Revised Ethics Opinion No. 69, issued by the Colorado Bar Association, and relied upon by the *Johnson* court, also prohibits unauthorized ex parte communications with organizational em-

ployees whose "acts, omissions, or statements may be imputed to the organization as a matter of law." CBA Revised Ethics Opinion No. 69: Communicating with the Employee or Former Employee of an Adverse Party Organization (1987) (reprinted in 16 Colo.Law. 1347, 1429 (1987)). It is interesting to note, but unnecessary to decipher, dicta in *Johnson* indicating disapproval of the third category of the Comment test. *Compare Johnson*, 930 F.Supp. at 1442 *with* CBA Rev. Ethics Op. No. 69.

nessed an event and whose statements concerning the matter exceed the scope of the employment.

The Court does not agree with Plaintiff's assertion that category three, which is a reference to Rule 801(d)(2)(D) of the Federal Rules Evidence, *Brown*, 148 F.R.D. at 254, works a blanket ban on all ex parte communications with an organization's employees. According to Rule 801(d)(2)(D), "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed.R.Evid. 801(d)(2)(D).[7] As alluded to in the preceding paragraph, "[e]mployees do not come under [Rule] 801(d)(2)(D) unless their job function has something to do with the issue at hand." *McCallum v. CSX Transp., Inc.*, 149 F.R.D. 104, 111 (M.D.N.C.1993); *see also Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1440 (9th Cir.1990). Moreover, before an organization is represented by counsel in the matter, the third category of the Comment test is inoperable. *See infra* discussion at pp. 14–17. Finally, all organizational employees may be interviewed ex parte upon permission of the organization's counsel.

■ Before applying the Comment categories to the ex parte communications at issue, the Court must determine whether Supreme Court Rule 182 has even become operational, considering that the communications occurred before a complaint was filed. Not surprisingly, the case law in this area is far from uniform. Several courts have held that the plain language of Model Rule 4.2 indicates that "the Rule only has application when the communication is with a 'party' which means after litigation has commenced." *Weider Sports Equip. Co., Ltd.*, 912 F.Supp. at 506. *Accord Berryman*, 1995 WL 517642, at *2; *Faragher v. National R.R. Passenger Corp.*, Civ.A. No. 91–2380, 1992 WL 25729, at *1 (E.D.Pa. Feb. 7, 1992); *Gaylard v. Homemakers of Montgomery*

*Inc.*, 675 So.2d 363, 367 (Ala.1996). Other courts have reached the opposite conclusion, finding that "[t]he Rule and the Comment do not mention litigation as any sort of benchmark." *Kole*, 1997 WL 47454, at *3 (dictum). *Accord Johnson*, 930 F.Supp. at 1440; *Shoney's, Inc. v. Lewis*, 875 S.W.2d 514, 515 (Ky.1994).

Not content to rely on the language of the Rule alone, two courts in the first camp have found it important to note whether the attorney subject to the ethics prohibition "knew, or even had reason to think, that [the organization] had retained counsel in regard to the matter" at hand. *Gaylard*, 675 So.2d at 367; *accord Faragher*, 1992 WL 25729, at *1. This consideration implies that Model Rule 4.2 may indeed have some pre-litigation applicability. In *Metrahealth Ins. Co. v. Anclote Psychiatric Hosp.*, the court formulated a test based solely on the knowledge of the attorney, explaining: "requiring that an attorney have actual knowledge of representation frames a rule of conduct that can as a practical matter reasonably be imposed while preventing routine fact-finding from becoming unnecessarily complicated." 961 F.Supp. 1580, 1583 (M.D.Fla.1997) (quotation omitted). This concern for routine, uncomplicated fact-finding, is a reference to Rule 11 of the Federal Rules of Civil Procedure, and is present among the decisions of both camps referenced above. *See, e.g., Johnson*, 930 F.Supp. at 1441 (stating that "[a]n interpretation of Rule 4.2 that limits counsel to (and burdens their clients with the costs of) formal discovery during the investigatory stages of civil litigation is not only fundamentally unfair, but also frustrates the purposes of Rule 11"); *Berryman*, 1995 WL 517642, at *3 (finding "merit in the policy argument that plaintiffs' attorneys should be permitted to make reasonable inquiries before filing a complaint"); *Faragher*, 1992 WL 25729, at *2 ("The creators of Rule 4.2 obviously did not intend to retard investigation and countermand Rule 11.").

Considering the above-cited cases, the Court finds the more well-reasoned approach

---

**7.** Nevada Revised Statute section 51.035(3)(d) likewise provides that a statement is not hearsay if "[t]he statement is offered against a party and is . . . [a] statement by his agent or servant con-

cerning a matter within the scope of his agency or employment, made before the termination of the relationship." Nev.Rev.Stat. § 51.035 (1997).

to be that advanced in *Johnson*. There, it was held that "[An] organization should be considered a party anytime it has specifically retained counsel to represent its interests regarding the subject of representation or has specifically referred the matter to [in-]house counsel." *Johnson*, 930 F.Supp. at 1440 (alteration in original) (quotation omitted). The reasoning underlying this holding is that the "potential for harm to the attorney-client relationship . . . is not dependent on the existence of a civil action." *Id.* (citation omitted).

In addition to preserving the integrity of the attorney-client relationship, the *Johnson* approach, which is based on the original version of the Comment to Model Rule 4.2,[8] has been available to guide the interpretation of the no-contact rule since 1983. Moreover, the *Johnson* approach is not at odds with the knowledge requirement present in Model Rule 4.2, and establishes a reasonable, albeit somewhat precarious, coexistence between Rule 11 of the Federal Rules of Civil Procedure and the need to restrict intrusion into the attorney-client relationship.

■ Analyzing the facts of the case at bar in light of these legal precepts reveals the preliminary applicability of Supreme Court Rule 182. Prior to engaging in the prelitigation ex parte communications at issue, Silverberg had (1) informed Pioneer that Plaintiff intended to pursue a claim of gender discrimination; (2) filed a charge of discrimination with the EEOC; and (3) been contacted by counsel for Pioneer concerning Plaintiff's discrimination claims. Thus, Silverberg was aware that Pioneer was represented by counsel concerning the subject matter of the ex parte communications. Although the Court recognizes that Silverberg was required by Civil Procedure Rule 11 to conduct a reasonable investigation before filing a complaint, the strictures of Supreme Court Rule 182 were activated by Silverberg's overt

threat to Pioneer of pending litigation and the announced appearance of Pioneer's counsel to defend against that threat.

The remaining determination for the Court focuses on the particular organizational employees contacted by Silverberg.

### 1. Kapetanakis

■ During his deposition, Kapetanakis stated that his position as an executive sous chef was a supervisory position, which involved interviewing and hiring cooks, dishwashers, and sous chefs. He further stated that he was responsible for "running [the Pioneer Hotel's] restaurants, the main kitchen, . . . banquets, . . . doing most of the menus . . . [and] running the whole operation." Def.'s Mot. to Disqualify (Dkt.# 24), Ex. 5 at 46.

To be covered by the first category of the Comment test (an employee having managerial responsibility) as this Court has chosen to interpret it, Kapetanakis must have been an employee possessing the legal authority to bind Pioneer in a legal evidentiary sense. In other words, he must have been a "person authorized by [Pioneer] to make a statement concerning the subject." Fed.R.Evid. 801(d)(2)(C). *See also Kadiak Fisheries Co. v. Murphy Diesel Co.*, 70 Wash.2d 153, 422 P.2d 496, 502 (1967) (discussing the common law "admission against interest" exception to the hearsay rule and its interplay with the law of agency, which was cited in *Wright* as support for the "managing-speaking agent" test); *Lidge*, 45 Ark.L.Rev. at 820, 837 n. 156. In this regard, there is no indication, either explicit or implicit, that Pioneer had authorized Kapetanakis to make statements concerning the hiring of individuals by other Pioneer employees. The ex parte communication between Silverberg and Kapetanakis only concerned Zamora's statement to Kapetanakis that he (Zamora) had hired Plaintiff. Further, in the much broader sense, Pioneer

---

8. Comment 3 to the original version of Model Rule 4.2 provided that the "rule covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question." Model Rules of Professional Conduct Rule 4.2 cmt. (1983). The 1995 amendments to the Model Rule and its Comment fortified this position, in part, by replacing references to "party" with "person". *See* Annotated Model Rules of Professional Conduct 394 (3d ed.1996); *Weider Sports Equip. Co., Ltd.*, 912 F.Supp. at 506. Those amendments, of course, had no effect on Supreme Court Rule 182 beyond the utilization of the Comment for interpretive guidance.

has not established that Kapetanakis had managerial responsibility sufficient to "settle controversies on its behalf." *Wright,* 691 P.2d at 570 (quotation omitted).

As to the second category of the Comment test (an employee whose act or omission may be imputed to the organization), there is no allegation that Kapetanakis played any part in the employment decision affecting Plaintiff.

The third category of the Comment test (an employee whose statement may constitute an admission by the organization), however, does cover Kapetanakis. Because his job responsibilities included hiring employees, Kapetanakis was in a position to make statements concerning the hiring policies of Pioneer. Under Federal Rule of Evidence 801(d)(2)(D), such statements would be excluded from the hearsay rule. *See Abrams v. Lightolier,* 50 F.3d 1204, 1215–16 (3d Cir. 1995) (admission of testimony containing a statement of employment policy by a company supervisor who was not involved in the decision to terminate plaintiff); *Cline v. Roadway Express, Inc.,* 689 F.2d 481, 488 (4th Cir.1982) (same). Consequently, Kapetanakis's ability to make binding admissions on the part of Pioneer, concerning the matter at issue in this litigation, placed him squarely within category three of the Comment test.

**2. Favero**

During her deposition, Favero indicated that, since 1996, she had been working for Pioneer doing "on-call banquets." Whatever the precise import of this job description, it is clear that Favero neither possessed managerial responsibility nor committed any act or omission in relation to the employment decision affecting Plaintiff. Further, Pioneer has not offered any evidence revealing that the scope of her "on-call banquet" employment would enable her to make an admission under Federal Rule of Evidence 801(d)(2)(D). When Silverberg communicated with Favero in March 1997, there is no indication that her job responsibilities included hiring or terminating employees, or relaying such information. *See Precision Piping v. E.I. du Pont de Nemours,* 951 F.2d 613, 620 (4th Cir.1991) (precluding testimony containing statement

of trade association delegate, that he was being urged to fire plaintiff, because delegate had no authority to hire or fire, or relay messages regarding the employer's policies).

Pioneer does emphasize that prior to working "on-call banquets," Favero was employed as a part-time relief supervisor, occasionally interviewing and hiring employees. This does not, however, bring Favero within the ambit of the evidentiary rule. *See N.L.R.B. v. Sherwood Trucking Co.,* 775 F.2d 744, 750 (6th Cir.1985) (fact that employee once had authority to hire and fire held insufficient to transform his statements into party-opponent admissions at the time he lacked such authority). Thus, Favero is not covered by the third category of the Comment test.

**3. Walker**

According to the parties, Walker was a PBX operator at the Pioneer Hotel who may have relayed telephone calls between Plaintiff and Zamora. Although the timing is not clear, it seems that Silverberg communicated with her ex parte both during her employment and shortly thereafter. Thus, the Court will discuss whether Walker is covered by the Comment test either as a current employee or a former employee.

In regard to her status as a current employee, the facts clearly do not implicate either the first category or the second category of the Comment test. Whether Walker is covered by the third category, though, deserves more analysis.

In *United States v. Portsmouth Paving Corp.,* the Fourth Circuit found testimony that revealed a defendant's statement through his secretary's relaying of the statement, admissible under clauses (A) and (D) of Federal Rule of Evidence 801(d)(2). 694 F.2d 312, 322 (4th Cir.1982). The court reasoned that the secretary's statement fell under clause (D) because "part of her job entailed relaying messages from [the defendant] to business callers." *Id.* In the instant case, by contrast, Pioneer has not indicated that relaying messages—rather than connecting telephone calls—was within the scope of Walker's employment as a switchboard operator. This point is underscored

by Walker's affidavit statement: "I saw Mr. Gregg [sic] Zamora and told him that I heard through [Plaintiff] that he, Gregg Zamora, hired [Plaintiff] to work at the Pioneer Hotel and ... Mr. Zamora confirmed this and told me that [Plaintiff] was in fact hired." Aff. of Walker at ¶¶ 4–5, appended to Def.'s Mot. to Disqualify (Dkt.# 24), Ex. 3. As the quotation shows, the conversation between Zamora and Walker did not occur within the scope of her employment as a switchboard operator. The third category of the Comment test is, thus, inapplicable.

To the extent that Walker was a former employee when Silverberg communicated with her ex parte, Supreme Court Rule 182 is inapplicable for the reasons expressed below in connection with former-employee Lorentz.

### 4. Lorentz

■ At the time Silverberg communicated with Lorentz, she was no longer employed by Pioneer. During her employment, however, she occupied a supervisory position and apparently witnessed discriminatory practices used by agents of Pioneer. Nevertheless, "the clear majority of courts interpreting Rule 4.2 have held, consistent with [American Bar Association Formal Opinion 91–359 (issued March 22, 1991)], that Rule 4.2 does not apply to communication[s] with former employees of an organizational party who no longer have any relationship with the organization." *Aiken v. Business & Indus. Health Group, Inc.*, 885 F.Supp. 1474, 1477 (D.Kan.1995) (collecting cases). The rationale underlying the inapplicability of Model Rule 4.2 to former employees was aptly summarized in *Terra Int'l, Inc.*:

> a former employee no longer works on the organization's behalf, is unlikely to be represented by the organization's counsel, and unlikely to be a participant in the process leading to resolution of the dispute; ... [and] do[es] not fit within the definition of a 'party' with whom ex parte contacts are forbidden.

913 F.Supp. at 1314 (citations omitted). The Court finds this rationale persuasive and adopts it, as well as the majority rule, for

application in this district. The Court will also adopt, however, a common-sense qualification on the application of the majority rule that has been advanced by courts and commentators alike: when communicating with a former employee of an organization, the adverse attorney may not inquire into areas subject to the attorney-client or work product privileges. *See Jenkins v. Wal–Mart Stores, Inc.*, 956 F.Supp. 695, 697 (W.D.La. 1997); *Thorn v. Sunstrand Corp.*, No. 95 C 50099, 1997 WL 627607, at *3 (N.D.Ill. Oct. 10, 1997); *Concerned Parents v. Housing Auth. of St. Petersburg*, 934 F.Supp. 406, 409 (M.D.Fla.1996); *Terra Int'l. Inc.*, 913 F.Supp. at 1316; Geoffrey C. Hazard, Jr. & W. William Hodes, The Law of Lawyering § 4.2:107 (2d. ed.Supp.1998).

Returning to the facts of the case at bar, because Pioneer has not established that Silverberg inquired into privileged matters during his communications with former-employee Lorentz, the Court finds, as it did with Favero and Walker, no ethical violation. There remains, however, the ethical violation which arose from Silverberg's communication with Kapetanakis. This subject is addressed next.

### B. *The Appropriate Sanction*

■ In *Faison v. Thornton*, Magistrate Judge Johnston addressed four possible sanctions for an attorney's violation of Supreme Court Rule 182: exclusion of the improperly obtained evidence; disqualification; dismissal of the litigation; and imposition of a monetary penalty based on the costs and fees incurred by the moving party. 863 F.Supp. at 1215. Regarding disqualification, Magistrate Judge Johnston found that the *Cronin* standard for disqualification (whether "the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case"[9]) does not "adequately address an attorney's duty to maintain the integrity of the legal profession" because a flagrant violation of the no-contact rule might not result in public skepticism of "the legitimacy of the court proceedings." *Faison*, 863

---

**9.** *Cronin,* 105 Nev. at 641, 781 P.2d at 1153

(quotation omitted).

F.Supp. at 1216. Consequently, Magistrate Judge Johnston formulated a test balancing the client's interest in being represented by counsel of her choice against "(a) the likelihood that the ethics violation will prejudice the proceeding, (b) the extent to which the violation undermined the integrity of the judicial process and (c) the affect [sic] the violation has on the attorney client privilege." *Id.* 863 F.Supp. at 1217.[10]

■ Applying this test to Silverberg's violation of Supreme Court Rule 182, the Court concludes that disqualification is unwarranted. First, Silverberg's improper ex parte communication with Kapetanakis only resulted in Kapetanakis's three-sentence affidavit, providing that he was told by Zamora that he (Zamora) had hired Plaintiff. This same statement was made by Favero and Walker, and repeated by Kapetanakis in his deposition. Second, while Silverberg's unethical conduct has impugned the integrity of the judicial process, the Court cannot say that the damage is so great as to justify the draconian sanction of disqualification. Third, Kapetanakis stated in his deposition that the only matter discussed with Silverberg was Zamora's statement. Thus, it does not appear that any communications protected by the attorney-client privilege were revealed to Silverberg. In conclusion, these three considerations do not outweigh Plaintiff's considerable interest in being represented by the counsel of her choice.

■ Notwithstanding that conclusion, there are consequences to Silverberg's ethics violation. The Court finds it appropriate to exclude the affidavit of Kapetanakis, as well as the portion of Kapetanakis's deposition transcript referring to the affidavit and the ex part communication, from any use at trial. *See id.* 863 F.Supp. at 1215 (excluding evidence based on attorneys' unreasonable and imprudent conduct). Precluding Kapetanakis from testifying at trial, though, would simply punish the Plaintiff for her attorney's misconduct without providing a significant benefit to Pioneer, considering that Favero and Walker made statements mirroring Ka-

petanakis's. *See McCallum,* 149 F.R.D. at 111–12 (adopting the practice of excluding only the unethically obtained Rule 801(d)(2)(D) admission from trial). Additionally, the Court will impose a monetary penalty against Silverberg commensurate with the costs and attorney fees expended by Pioneer in bringing its motion based on the ex parte communication with Kapetanakis. The Court will also forward a copy of this decision to the Ethics Department of the Nevada State Bar Association for possible disciplinary action.

That Silverberg contacted the Nevada Bar Counsel regarding the propriety of ex parte communications does not mitigate his misconduct, given that he only inquired about communicating ex parte with former employees. Kapetanakis was still employed by Pioneer at the time of the improper ex parte communication. Moreover, the only evidence that Silverberg contacted the Nevada Bar Counsel is Silverberg's thank-you letter dated December 1997—eight months after the improper ex parte communication.

The final matter the Court takes up is Pioneer's request that Silverberg be prohibited from communicating ex parte with Zamora. The Court finds that, so long as Zamora is a current employee of Pioneer, he is covered by Supreme Court Rule 182 regarding the subject matter of this litigation.

### III.

### *CONCLUSION*

By communicating ex parte with Kapetanakis, an employee capable of making an admission imputable to Pioneer, Silverberg violated Supreme Court Rule 182. Silverberg's communications with Favero, Walker, and Lorentz, however, were proper.

Accordingly, it is hereby ORDERED that the motion to disqualify (Dkt.# 24) is granted to the extent it asserts an ethics violation, but denied as to the remedy sought. The appropriate remedies are (1) exclusion of the Kapetanakis affidavit, and the Kapetanakis

---

10. The concern for uniformity that attends this Court's decision to apply the same ethics tests present in *Cronin* does not apply in the context of sanctions. An attorney's course of conduct should not be guided by considerations of which test will be used to determine the propriety of disqualification following an ethics violation.

deposition transcript insofar as it refers to the affidavit and ex parte communication; and (2) a monetary penalty in the amount of the costs and fees incurred by Pioneer in bringing its motion based on Silverberg's ex parte communication with Kapetanakis. So that the Court may determine the amount of the penalty, Pioneer shall submit a detailed affidavit of its costs and fees by May 29, 1998. Any objection to the figures present in the affidavit shall be filed by June 17, 1998. There shall be no reply.

It is further ORDERED that the United States District Court Clerk forward a copy of this decision to the Ethics Department of the Nevada State Bar Association for possible disciplinary action.

It is further ORDERED that Silverberg not communicate ex parte with Zamora concerning the subject matter of this litigation while Zamora is employed by Pioneer.

Finally, it is ORDERED that Plaintiff's request for sanctions, asserted in her opposition brief (Dkt.# 28), is DENIED.