[No. 50801–1.  En Banc.  December 6, 1984.]

JEFFREY D. WRIGHT, ET AL, *Petitioners,* v. GROUP HEALTH HOSPITAL, ET AL, *Respondents.*

*Paul N. Luvera, Jr.,* and *John G. Kamb, Jr.,* for petitioners.

*Williams, Lanza, Kastner & Gibbs,* by *John A. Rosendahl,* for respondents.

*Robert H. Whaley* and *Bryan P. Harnetiaux* on behalf of Washington Trial Lawyers Association and *Leonard W. Schroeter,* amici curiae for petitioners.

DOLLIVER, J.—The question presented in this appeal is whether, in connection with events leading to a medical malpractice action, a defendant hospital corporation may prohibit its current employees from conducting ex parte interviews with plaintiffs' attorneys. The trial court held these interviews would violate CPR DR 7–104(A)(1). We reverse.

I

This appeal arose out of plaintiffs' medical malpractice action pending against Group Health Hospital (Group Health) and Dr. Kevin Schaberg, its employee. In the malpractice action, plaintiffs allege defendant employees of Group Health, including Dr. Schaberg, committed medical malpractice in the care and management of Mrs. Wright during labor and delivery of her son Jeffrey.

Group Health is a large Seattle–based health care cooperative. When a medical malpractice action is brought against it, Group Health has a policy of giving the following instructions to the individuals involved in the care of the plaintiff/patient. Group Health advises these employees

that its outside counsel represents Group Health in the action; the employees will be contacted by and should fully cooperate with this law firm; their communications with the law firm are confidential; and they are not to discuss the case with anyone other than said law firm. This notice is given to the pertinent employees even if they were not currently employed by Group Health.

During the course of discovery in the malpractice action, plaintiffs' attorney asked for the addresses and telephone numbers of nurses involved in the care of Mrs. Wright. The information was provided with the understanding that such nurses were to be regarded as clients of the law firm and that plaintiffs would make no effort to contact these nurses ex parte. Group Health's attorneys asserted these ex parte interviews were barred by the attorney–client privilege and the disciplinary rules. Plaintiffs' attorney disagreed and moved for a protective order declaring he had both the legal and ethical right to interview ex parte both current and former Group Health employees so long as they were not management employees.

The trial court denied plaintiffs' motion for a protective order. The court affirmed the defendant corporation's right to give a blanket instruction to its *current* nonparty employees not to have ex parte contacts with plaintiffs' attorneys. The court held these interviews would violate CPR DR 7–104(A)(1). Plaintiffs' appeal was certified from Division One of the Court of Appeals.

## II

Group Health argues that as a corporation represented by counsel, its current and former employees are "clients" of the law firm for purposes of the attorney–client privilege. To preserve the confidences and secrets protected by the privilege, Group Health argues its employees should not be discoverable by plaintiffs on an ex parte basis. We disagree.

The attorney–client privilege, RCW 5.60.060(2), provides that an attorney shall not, without the consent of his client, be examined as to any *communication* made by the

client to him, or his advice given thereon in the course of professional employment. While the attorney–client privilege may in certain instances extend to lower level employees not in a "control group", *Upjohn Co. v. United States,* 449 U.S. 383, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981), the privilege extends only to protect communications and not the underlying facts. This distinction was noted by the *Upjohn* Court:

> "[T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."

*Upjohn Co.,* at 395–96 (quoting *Philadelphia v. Westinghouse Elec. Corp.,* 205 F. Supp. 830, 831 (E.D. Pa. 1962)).

In *Upjohn* the "communication" was the correspondence between the corporate employee and corporate counsel. At issue was the applicability of the privilege to the employee. In the present case, plaintiffs' attorney does not seek to discover a *communication* by a Group Health employee. Indeed, there is no communication which Group Health claims is privileged. Plaintiffs' attorney seeks to interview Group Health employees to discover *facts* incident to the alleged medical malpractice, not privileged corporate confidences.

We hold the attorney–client privilege does not in itself bar plaintiffs' attorney from interviewing defendant corporation's employees.

## III

Group Health next argues all of its current and former employees are "parties" within the meaning of CPR DR 7–104(A)(1) and the rule would be violated if plaintiffs' counsel attempted to contact Group Health's employees.

CPR DR 7–104(A) provides:

During the course of his representation of a client a lawyer shall not:
(1) Communicate or cause another to communicate on the subject of the representation with a *party* he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.
. . .
(Italics ours.)

### A

CPR DR 7–104(A)(1) (rule) is based on the American Bar Association original version of Canon 9, which was superseded by the adoption of the American Bar Association of the Code of Professional Responsibility in 1970. Leubsdorf, *Communicating With Another Lawyer's Client: The Lawyer's Veto and the Client's Interest,* 127 U. Pa. L. Rev. 683, 685 n.10 (1979) (Leubsdorf). The original Canon 9 read:

A lawyer should not in any way communicate upon the subject of controversy with a party represented by counsel; much less should he undertake to *negotiate* or *compromise* the matter with him, but should deal only with his counsel.

(Italics ours.) ABA Canons of Professional Ethics 9 (1908); H. Drinker, *Legal Ethics* 201 (1953); Leubsdorf, *supra.*

The official historical purposes of the rule and its predecessor Canon 9 were twofold: preserving the proper functioning of the legal system and shielding the adverse party from improper approaches. ABA Comm. on Professional Ethics and Grievances, Formal Op. 108 (1934). Others characterized the historical purposes of the rule as preventing attorneys from "stealing clients" (H. Drinker, *Legal Ethics,* at 190), or to proscribe attorney contacts with represented parties so they would not diminish potential contingent fees by negotiating unfavorable settlements directly with clients. Note, *DR 7–104 of the Code of Professional Responsibility Applied to the Government "Party",* 61 Minn. L. Rev. 1007, 1010 (1977) (Note, *Govern-*

*ment "Party"*). In more recent years, however, the purpose of the rule has been said to shield the represented client from improper approaches. Note, *Government "Party"*, *supra. See also State v. Thompson,* 206 Kan. 326, 330, 478 P.2d 208 (1970). The general thrust of the rule is to prevent situations in which a represented party may be taken advantage of by adverse counsel; the presence of the party's attorney theoretically neutralizes the contact. *See* Kurlantzik, *The Prohibition on Communication With an Adverse Party,* 51 Conn. B.J. 136, 145–46 (1977).

## B

Plaintiffs' attorney does *not* seek ex parte contacts with Group Health's employee, Dr. Schaberg, who *is* a joined party in this action. Rather, plaintiffs seek to interview ex parte nurses and other Group Health personnel all of whom are *not* parties in the malpractice action. While easily identifiable in litigation between private parties, the scope of CPR DR 7–104(A)(1) is less clear when one party is a corporation, as is Group Health. In this context the crucial issue is: Which of the corporate party's employees should be protected from approaches by adverse counsel?

In our adversarial legal system, a policy conflict arises when a corporation attempts to use CPR DR 7–104(A)(1) defensively so as to prevent an adverse attorney from interviewing its employees ex parte. On the one hand, there is the need of the adverse attorney for information which may be in the exclusive possession of the corporation and may be too expensive or impractical to collect through formal discovery. On the other hand is the corporation's need to protect itself for the traditional reasons justifying the rule. For discussion of the conflicting interests, *see generally IBM Corp. v. Edelstein,* 526 F.2d 37, 41–43 (2d Cir. 1975) (judge's order requiring that ex parte interviews of defendant government employees be transcribed exceeded trial court's authority because informal witness interviews serve important fact–finding function); Leubsdorf, *supra* at 695; Note, *Government "Party"*, *supra* at 1013–16. In

attempting to balance the conflicting policies, courts, bar associations, and commentators have struggled with the issue whether a corporate party's employee should be considered a "party". The decisions may be classified as follows.

Some authorities declare CPR DR 7–104(A)(1) does *not* bar ex parte interviews with *any* of a corporate party's employees who were witnesses to the acts or omissions giving rise to the action. These authorities, moreover, do not require the consent of adverse counsel in advance of these interviews. ABA Comm. on Professional Ethics and Grievances, Formal Op. 117 (1934) (plaintiff's attorney may interview defendant store's employees in connection with plaintiff's slip and fall in defendant's store); Los Angeles Cy. Bar Ass'n, Op. 234 (1956), *digested in* O. Maru, *Digest of Bar Association Ethics Opinions* 66 (1970) (hereinafter 1970 *Digest*); Michigan State Bar Ass'n, Op. 141 (1951), *reprinted in* 38 Mich. St. B.J. 181 (1959) (permissible to interview defendant corporation's clerks who had witnessed or were involved in accident causing injury without obtaining consent of opposing counsel); New York City Bar Ass'n, Op. 331 (1935), *digested in* 1970 *Digest,* at 279 (same).

Other authorities *conditionally* permit an adverse attorney to interview ex parte employees of a corporate party. These authorities distinguish

> officers and directors with power to bind the corporation and employees lacking such power to bind. The former tend to be considered parties while the latter are considered witnesses . . .

Lawyers' Manual on Professional Conduct (ABA/BNA) 71:314 (1984). This appears to be the American Bar Association's most recent approach. The bar held that nonparty employees can be interviewed ex parte so long as they cannot

> commit the corporation because of their authority as corporate officers or employees or for some other reason the law cloaks them with authority . . . as the alter egos of the corporation . . .

Lawyers' Manual on Professional Conduct, *supra* (quoting ABA Comm. on Professional Ethics and Grievances, Informal Op. 1410 (1978)). *Accord,* Model Rules of Professional Conduct Rule 4.2 comment (1983) (persons having a managerial responsibility on behalf of the organization); Los Angeles Cy. Bar Ass'n, Op. 369 (1977), *digested in* O. Maru, *1980 Supplement to the Digest of Bar Association Ethics Opinions* 75–76 (1982) (distinguishing employees with "authority to negotiate", whose admissions are valid, and who have access to confidential corporate information); Arizona State Bar Ass'n, Op. 203 (1966), *digested in* O. Maru, *1970 Supplement to the Digest of Bar Association Ethics Opinions* 127 (1972) (hereinafter 1970 *Supplement)* ("speak for and bind" municipality); Idaho State Bar Ass'n, Op. 21 (1960), *digested in* 1970 *Digest,* at 105 (officers and directors who were the corporation's alter ego); H. Drinker, *Legal Ethics* 201 (1953). One commentator argues the rule should be extended not only to the corporation's "managing agents" but to all employees through whom the corporation speaks. Leubsdorf, *supra* at 695.

Other authorities define "party" based on the employee's relationship to the matter in which the attorney is seeking information, *i.e.,* is the employee merely a witness or is the act or omission of the employee imputed to the corporation for purposes of civil liability. *See, e.g.,* Texas State Bar Ass'n, Op. 342 (1968), *digested in* 1970 *Supplement,* at 297 (no ex parte interviews if employee is person whose acts or omissions led to the lawsuit); Louisiana State Bar Ass'n, Op. 326 (1968), *digested in* 1970 *Supplement,* at 225 (same); Model Rules of Professional Conduct Rule 4.2 comment (1983) (rule prohibits communication with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability).

Finally, one authority appears to proscribe completely ex parte interviews with a corporate party's employees. New York Cy. Year Book, Op. 528 (1965), *digested in* 1970 *Digest,* at 241–42.

One court interpreting the rule rejected a fixed test for determining whether a corporate employee was a "party". Rather, the court held the interviewing government attorneys were "sensitive" to the ethical considerations because they identified themselves as adverse attorneys and instructed the corporate employees in advance that they had the right to an attorney during the interview. Nevertheless, the court directed there could be no ex parte interviews of the company's president, chairman, or plant managers. *In re FMC Corp.,* 430 F. Supp. 1108, 1110–11 (S.D. W. Va. 1977). Another court, analyzing a case in which the government was the defendant, stressed the vital First Amendment interest in contacting ex parte the government's employees. *Vega v. Bloomsburgh,* 427 F. Supp. 593 (D. Mass. 1977); *see generally* Leubsdorf, *supra* at 694– 95.

## C

We hold the best interpretation of "party" in litigation involving corporations is only those employees who have the legal authority to "bind" the corporation in a legal evidentiary sense, *i.e.,* those employees who have "speaking authority" for the corporation. This interpretation is consistent with the declared purpose of the rule to protect represented parties from the dangers of dealing with adverse counsel. Leubsdorf, *supra* at 686–88. A flexible *interpretation* of "parties", moreover, advances the policy of keeping the testimony of employee witnesses freely accessible to both parties. *See* ABA Comm. on Professional Ethics and Grievances, Formal Op. 117 (1934). We find no reason to distinguish between employees who in fact witnessed an event and those whose act or omission caused the event leading to the action. It is not the purpose of the rule to protect a corporate party from the revelation of prejudicial facts. *Accord, Coburn v. Seda,* 101 Wn.2d 270, 276–77, 677 P.2d 173 (1984) (discovery immunity statute will be strictly construed; it does not grant an immunity to information available from original sources). Rather, the rule's

function is to preclude the interviewing of those corporate employees who have the authority to *bind* the corporation. H. Drinker, *Legal Ethics* 201 (1953).

### D

We hold *current* Group Health employees should be considered "parties" for the purposes of the disciplinary rule if, under applicable Washington law, they have managing authority sufficient to give them the right to speak for, and bind, the corporation. Since former employees cannot possibly speak for the corporation, we hold that CPR DR 7-104(A)(1) does not apply to them.

The "managing–speaking" agent test has its roots in agency and evidence law. The well established test is a flexible one under the circumstances of each case. *Compare Young v. Group Health Coop.*, 85 Wn.2d 332, 534 P.2d 1349 (1975) (doctor had "speaking authority" for hospital) *and Griffiths v. Big Bear Stores, Inc.*, 55 Wn.2d 243, 347 P.2d 532 (1959) (manager for supermarket had "speaking authority") *with Kadiak Fisheries Co. v. Murphy Diesel Co.*, 70 Wn.2d 153, 422 P.2d 496 (1967) (maintenance manager for commercial fishing company did not have "speaking authority"). *See also Vannoy v. Pacific Power & Light Co.*, 59 Wn.2d 623, 636, 369 P.2d 848 (1962); *Hodgins v. Oles*, 8 Wn. App. 279, 282, 505 P.2d 825 (1973); 5A K. Tegland, Wash. Prac., *Hearsay* § 349 (2d ed. 1982).

Group Health asserts the agency law "managing–speaking" agent test is archaic since the United States Supreme Court has adopted, in *Upjohn,* a flexible "client" test extending coverage to many nonmanagerial employees. Group Health argues the "flexible" test in *Upjohn Co. v. United States,* 449 U.S. 383, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981) should apply to CPR DR 7-104(A)(1) in determining whether corporate employees are "parties" for purposes of the rule.

While Group Health is correct in noting that both the attorney–client privilege and the disciplinary rules share the mutual goals of "furthering the attorney–client rela-

tionship", the *policies* represented by these two rules are different. In enunciating a flexible "control group" test, the *Upjohn* Court was expanding the definition of "clients" so the laudable goals of the attorney–client privilege would be applicable to a greater number of corporate employees. The purpose of the disciplinary rule, on the other hand, is to protect the corporation so its agents who have the authority to prejudice the entity's interest are not unethically influenced by adverse counsel. Thus, the purpose of the managing–speaking agent test is to determine who has the *authority* to bind the corporation. As one commentator noted:

> Those who are ultimately responsible for managing the entity's operations have the strongest interest in the outcome of any dispute involving the entity. . . . These officials are the multi–person entity's alter ego—they can speak and act for the entity and can settle controversies on its behalf.

Note, *Government "Party", supra* at 1017. The policy reasons necessitating the "flexible" test in *Upjohn* are not present here. A corporate employee who is a "client" under the attorney–client privilege is not necessarily a "party" for purposes of the disciplinary rule.

Group Health contends the evidentiary rules governing speaking authority of agents serve a hearsay reliability function and should not be used in the "managing agent" determination. While it is true an agent's admissions and statements against a principal are considered "reliable", the more "satisfactory justification" of the evidence rule is that admissions by agents "are the *product of the adversary system,* sharing, though on a lower and nonconclusive level, the characteristics of admissions in pleadings or stipulations." (Italics ours.) E. Cleary, *McCormick on Evidence* § 262, at 629 (2d ed. 1972). The policies behind the speaking agent determination and the speaking agent distinction of CPR DR 7–104(A)(1) are not inconsistent.

E

Since we hold an adverse attorney may, under CPR

DR 7-104(A)(1), interview ex parte nonspeaking/managing agent employees, it was improper for Group Health to advise its employees not to speak with plaintiffs' attorneys. An attorney's right to interview corporate employees would be a hollow one if corporations were permitted to instruct their employees not to meet with adverse counsel. This opinion shall not be construed in any manner, however, so as to *require* an employee of a corporation to meet ex parte with adverse counsel. We hold only that a corporate party, or its counsel, may not *prohibit* its nonspeaking/managing agent employees from meeting with adverse counsel.

The case is remanded to the trial court with instructions that Group Health's cautioning letters be revoked as to the relevant employees and that appropriate relief be accorded consistent with this opinion.

WILLIAMS, C.J., and UTTER, BRACHTENBACH, DORE, DIMMICK, PEARSON, and ANDERSEN, JJ., concur.

Reconsideration denied January 14, 1985.