# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE

# A. THOMAS MONCERET v. THE BOARD OF PROFESSIONAL RESPONSIBILITY

**Appeal from the Chancery Court for Knox County**
**No. 133879-3     Irvin H. Kilcrease, Jr.,  Chancellor**

---

**No. E1999-00545-SC-R3-CV - Filed July 27, 2000**

---

This is an appeal from the Knox County Chancery Court, which affirmed a hearing panel's ruling that the appellant violated Tenn. R. Sup. Ct. 8, DR 7-104(A)(1) by deposing a witness that he knew to be represented by counsel.  We hold that the chancery court correctly determined that the term "party" used in DR 7-104(A)(1) is not limited to the named plaintiff or defendant in a lawsuit and may also include a witness who is represented by counsel.  We further hold that the protection of the Rule cannot be waived by the party but only by the party's lawyer.  Accordingly, we affirm the judgment.

### Direct Appeal; Judgment of the Knox County Chancery Court Affirmed

E. RILEY ANDERSON, C.J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, ADOLPHO A. BIRCH, JR., WILLIAM M. BARKER, and JANICE M. HOLDER, JJ., joined.

A. Thomas Monceret, Knoxville, Tennessee, Pro Se.

William W. Hunt, III, Disciplinary Counsel, Board of Professional Responsibility of the Supreme Court of Tennessee, Nashville, Tennessee, for the appellee, Board of Professional Responsibility.

### OPINION

The issue in this appeal is whether the appellant, A. Thomas Monceret, violated Tenn. Sup. Ct. R. 8, DR 7-104(A)(1), which states in part that a lawyer shall not "[c]ommunicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by a lawyer in that matter unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so."  Id.

A three-member hearing panel of the Board of Professional Responsibility determined that Monceret violated DR 7-104(A)(1) by issuing a subpoena and deposing a witness that he knew to be represented by counsel.  The Panel concluded that the witness was included in the term "party" as used in the rule and that the issuance of a subpoena for a deposition did not satisfy the exception

"or is authorized by law to do so." The Knox County Chancery Court affirmed both the hearing panel's ruling and its sanction of a private admonition.

After consideration of the record and authority, we conclude that the hearing panel and the chancery court correctly determined that the term "party" is not limited to the named plaintiff(s) or defendant(s) in a suit and may include a witness who is represented by counsel. We further conclude that the evidence in this case supports the findings of the hearing panel and chancery court and therefore affirm the judgment.

## BACKGROUND

The appellant, A. Thomas Monceret, a lawyer practicing in Knoxville, successfully obtained a judgment on behalf of his clients in a breach of contract suit against Frank Wankowski. Monceret thereafter initiated enforcement proceedings when Wankowski failed to pay the judgment. In the course of the enforcement proceedings, Monceret discovered that a business known as Financial Intensive Care Corporation (FICC) engaged in collections work for Wankowski. Monceret caused an attachment to issue against the accounts of FICC that were for the benefit of Wankowski and/or his businesses.

Monceret issued a subpoena duces tecum seeking to depose Diane Mealer, an employee and officer of FICC, and requesting FICC's records regarding Wankowski and/or his businesses. The deposition was initially scheduled for August 10, 1988. Prior to the deposition, an attorney representing Mealer telephoned Monceret and asked that the deposition be reset to another date. Monceret agreed and asked that Mealer's lawyer contact him to reschedule the deposition. Although Mealer's attorney did not call to reschedule, Mealer appeared for the deposition without her lawyer on August 10, 1988. According to Monceret, he discussed the absence of Mealer's attorney with Mealer before beginning the deposition, and Mealer elected to proceed in the absence of counsel.

Monceret began the deposition by asking numerous questions regarding the nature of Mealer's duties with FICC and the extent of her involvement with accounts collected for and monies directed to Wankowski. Mealer, an executive vice president, stated that FICC engaged in investment, consulting, and collection services. She was for the large part unable to answer questions regarding Wankowski. She stated that she did not bring any business records to the deposition despite the fact that Monceret had issued a subpoena duces tecum. She stated that the records were not in her possession and not in the possession of FICC because they had been returned to Wankowski and his attorney. When Monceret asked for further explanation, Mealer frequently indicated that she did not understand the question or did not have the knowledge to answer the question.

After several questions regarding Mealer's involvement with collecting and depositing funds related to Wankowski's business, the following exchange took place:

Q.      How long have you been in this type of business?

A.     Collecting?  Since 1980.

Q.     Just wherever the truth of the question is rather than play with it.

A.     1980.  I am not playing with you, sir.

Q.     You think it's funny when you smiled and used the word, "collected?"

A.     Well, I don' t know what you–

Q.     I asked the question, how long have you been in the business; how long have you been in the business, Ms. Mealer?

A.     If you are going to badger me, then we will reschedule this and I will have my attorney here to do this–

Q.     If you don't sit here and answer these questions, I am going to ask the Judge to put you in jail, ma'am.

A.     That's fine.

Q.     You are under a court order to be here.

A.     All right, sir.

Q.     How long have you been in the business?

A.     I refuse to answer.

Q.     You do?

A.     Yes, sir.

Q.     The funds that you had in the banking account during the period of time that you were paying Mr. Wankowski's accounts, were those, were those checks paid from the funds you collected on accounts receivable and the monies that were taken from the Post Office Box only?

A.     I refuse to answer.

Q.     Is it futile for me to go forward and ask other questions; are you going to refuse to answer those?

A.    The only thing I have to say for the record, if you care to keep badgering me, then I should have an attorney here.

When the deposition ended, Monceret told Mealer that she was not dismissed and that she could not leave the office. He also told Mealer that she could not use the telephone in his office and prevented her from doing so.[1]

In its factual findings, the hearing panel described Mealer as "conversational" during the deposition and not "literally responsive" to questioning. It described Monceret as "sarcastic and condescending." The Panel concluded that the term "party" as used in DR 7-104(A)(1) should be construed broadly to include a witness who is represented by counsel and that Monceret violated the rule by deposing Mealer. In rejecting Monceret's argument that Mealer had waived the presence of counsel, the Panel found that the Mealer revoked the waiver but that Monceret continued to ask questions.

Monceret sought review of the hearing panel's judgment by filing a petition for writ of certiorari with the chancery court.[2] The chancellor adopted the hearing panel's factual findings and conclusions of law and upheld the sanction imposed.

Monceret has now appealed to this Court. He argues that Mealer was a witness and not a "party" to the proceedings as that term is used in DR 7-104(A)(1); that even if Mealer was a party, she waived her right to the presence of counsel before the deposition began; and that even if Mealer was a party, the subpoena and deposition was "authorized by law." The Board maintains that a "party" as used in the Rule includes any person who is represented by counsel; that even if Mealer waived her right to the presence of counsel before the deposition, she revoked the waiver during the course of the deposition; and that the disciplinary rule cannot be circumvented by issuing a subpoena.

## ANALYSIS

We begin our analysis by reviewing the disciplinary rule at issue in this case, DR 7-104(A)(1), which states:

DR 7-104. Communicating with One of Adverse Interest. – (A) During the course of a lawyer's representation of a client a lawyer shall not:

---

[1]    According to the record, Monceret was acquitted of a criminal assault charge, and a civil action filed by Mealer was nonsuited.

[2]    Pursuant to Tenn. Sup. Ct. R. 9, § 1.3, a party may seek review of the hearing panel's decision by filing a petition for writ of certiorari with the chancery court. See Tenn. Code Ann. § 27-9-101 (1980). The judgment of the chancery court may then be appealed to this Court.

-4-

(1) Communicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by a lawyer in that matter unless the lawyer has the prior consent of the lawyer representing such other party or is authorized to do so.

Id. The main function of the disciplinary rule[3] is to preserve the proper functioning of the legal system and to "prevent situations in which a represented party may be taken advantage of by adverse counsel." Wright by Wright v. Group Health Hosp., 691 P.2d 564, 567 (Wash. 1984). As stated in the related ethical consideration, Tenn. R. Sup. Ct. 8, EC 7-18, "[t]he legal system in its broadest sense functions best when persons in need of legal advice or assistance are represented by their own counsel." Id.

The initial question in this case deals with the meaning and scope of "party" as used in the Rule. According to Black's Law Dictionary 1122 (6th ed. 1990), "party" includes any "person concerned or having or taking part in any affair, matter, transaction, or proceeding, considered individually." Id. Another source, however, contains multiple definitions of "party," including: "a person who participates or is concerned in an action, proceeding, plan, etc.," and "either of the persons or sides concerned in a legal matter." Webster's New World Dictionary 1037 (2d ed. 1980). Accordingly, to the extent that the term is reasonably susceptible to more than one meaning, it is ambiguous.

In a formal opinion released on July 28, 1995, the American Bar Association agreed that the word "party" as used in the rule is ambiguous and stated that "[t]he key to resolving this ambiguity. . . is consideration of the purposes intended to be served by the Rule." ABA Comm. on Ethics and Professional Responsibility, Formal Op. 95-396 (1995). The ABA observed that interests of "protecting the client-lawyer relationship from interference by [adverse] counsel, and protecting clients from disclosing privileged information that might harm their interests, are not limited to circumstances where the represented person is a party to an adjudicative or other formal proceeding." Id. It concluded:

> If the Rule is to serve its intended purpose, it should have broad coverage, protecting not only parties to a negotiation and parties to formal adjudicative proceedings, but any person who has retained counsel in a matter and whose interests are potentially distinct from those of the client on whose behalf the communicating lawyer is acting. Such persons would include targets of criminal investigations, potential parties to civil litigation, and witnesses who have hired counsel in the

---

[3] Tennessee adheres to the Model Code of Professional Responsibility, set forth in Tennessee Supreme Court Rule 9. Tenn. R. Sup. Ct. 9. The counterpart to DR 7-104 in the Model Rules of Professional Conduct is Rule 4.2. Model Rules of Professional Conduct Rule 4.2 (1999). Thus, whether following the Model Code or the Model Rules, virtually every jurisdiction adheres to the ethical principle at issue in this case. E.g., Gregory G. Sarno, Annotation, Communication With Party Represented by Counsel as Ground for Disciplining Attorney, 26 A.L.R.4th 102 (1983 & Supp. 1999).

matter. In sum, the Rule's coverage should extend to <u>any</u> represented person who has an interest in the matter to be discussed, who is represented with respect to that interest, and who is sought to be communicated with by a lawyer representing another party.

<u>Id.</u> (emphasis added) (footnotes omitted).

Other authority is in accord with the ABA formal opinion. One treatise on legal ethics states that "although the matter is not entirely clear under the Code, probably DR 7-104(A)(1) . . . prohibits contact with <u>any</u> represented person. . . ." Charles W. Wolfram, <u>Modern Legal Ethics</u> 611 (1986). In other words, "[t]he lawyerism party sometimes refers only to parties in litigation but evidently is here intended to refer broadly to any 'person' represented by a lawyer in a matter." <u>Id.</u> at 611 n.33; <u>see also</u> John Leubsdorf, <u>Communicating with Another Lawyer's Client: The Lawyer's Veto and the Client's Interest</u>, 127 U. Pa. L. Rev. 683 (1979).[4]

Similarly, a large majority of courts in a variety of circumstances, both civil and criminal, have held that a "party" is not limited to a named plaintiff or defendant. As one court has said:

[W]e have no trouble concluding that the definition of "parties" under the rule is not restricted to named parties in a lawsuit. The language of the rule suggests no limitation on the word "party." Instead, the rule prohibits communication "on the subject on the representation" with a party that is represented by a lawyer "in that matter." The use of the words "subject" and "matter," rather than "lawsuit," indicates that DR 7-104 applies to all transactions for which lawyers are hired and cannot be construed to imply that its application is limited to cases where suit is filed.

<u>In re Illuzzi</u>, 616 A.2d 233, 236 (Vt. 1992); <u>see also</u> <u>Hill v. St. Louis Univ.</u>, 123 F.3d 1144 (8th Cir. 1997) (rule applies to professor/employee where university is the named defendant); <u>Wright by Wright</u>, 691 P.2d 564 (Wash. 1984) (rule applies to managing employees who worked for a corporation that was the named defendant); Sarno, 26 A.L.R.4th at 108-11.

Accordingly, we conclude that the term "party" as used in DR 7-104(A)(1) is not limited to the named plaintiff or defendant in a pending lawsuit. The language used in the rule does not limit its applicability to named plaintiffs or defendants in a filed lawsuit. Moreover, the caption to the Rule states "communicating with <u>one</u> of adverse interest." Tenn. R. Sup. Ct. 8, DR 7-104 (emphasis added). Finally, we agree with the above authority that the Rule must be interpreted consistently

---

4    Monceret relies upon Tennessee Formal Ethics Opinion 83-F-46 for the proposition that "a lawyer may interview witnesses or prospective witnesses for opposing sides without the prior consent of opposing counsel." Tenn. Ethics Comm. Formal Op. 83-F-46 (1983). This opinion, however, is in the context of allowing an attorney to interview a non-management employee without the consent of counsel for a corporation that is the named defendant to a lawsuit. It does not address an attorney's interview of a witness who the attorney knows to have counsel on the subject of representation.

with the purposes of the Rule. As expressed in ethical consideration 7-18, which is the companion to DR 7-104(A)(1), "[t]he legal system in its broadest sense functions best when persons in need of legal advice or assistance are represented by their own counsel." Tenn. R. Sup. Ct. 8, EC 7-18. We therefore hold that an attorney may not communicate or cause another to communicate on the subject of representation with a witness the attorney knows to be represented by counsel.

We now turn to the application of this rule to the facts of this case. The record clearly supports the findings of the chancery court and hearing panel that Monceret knew that Mealer was represented by counsel and that the deposition pertained to the subject of Monceret's representation. Monceret does not contest these findings, but rather, argues that Mealer waived her right to counsel. The Board tacitly goes along with this position by arguing that Mealer withdrew her waiver near the end of the deposition but that Monceret continued to ask questions.

In our view, the waiver argument in the context of DR 7-104(A)(1) is misplaced. First, the language of the Rule specifically requires the consent of the party's lawyer, and there is no indication that the party alone may waive the protections of the Rule. This interpretation reflects that adopted by the ABA in its formal opinion:

> [The Rule] exempts communications if the lawyer representing the contacted person consents; but the Rule says nothing about permitting the represented person to forego the protection accorded him by the ethical responsibilities of the communicating lawyer. This Committee concluded in Formal Opinion 108 (1934) that the anti-contact rule does not contemplate such a waiver.
> ...
>
> While the Committee recognizes that not allowing the represented person to waive the Rule's protection may be seen as paternalistic, it believes that [the] Rule requires that result. Reflecting the concern that the represented person may not be in a position to make an informed waiver of the presence of counsel, the Rule operates to reduce the likelihood of the represented person in communications that might ultimately prove harmful to her cause by imposing a strict ethical obligation on the communication.

ABA Comm. on Ethics and Professional Responsibility, Formal Op. 95-396.[5]

An apparent majority of courts have followed this interpretation and have held that the Rule is not waived simply because the represented person initiates contact or is otherwise willing to communicate. United States v. Lopez, 4 F.3d 1455 (9th Cir. 1993); People v. Green, 274 N.W.2d

---

[5] Similarly, the ABA opinion indicates that if a party informs the attorney that he or she is no longer represented by counsel, the attorney must establish "reasonable assurance" that the information is accurate. The most effective way of doing so is to contact the party's lawyer. See In re News Am. Publ'g, Inc., 974 S.W.2d 97 (Tex. Ct. App. 1998).

448 (Mich. 1979); State v. Miller, 600 N.W.2d 457 (Minn. 1999); In re News Am. Publ'g, Inc., 974 S.W.2d 97 (Tex. Ct. App. 1998). As the Lopez court observed, "[t]he rule against communicating with represented parties is fundamentally concerned with the duties of attorneys, not with the rights of parties." Lopez, 4 F.3d at 1462. In short, the ethical responsibility rests with the attorney and not the layman.

In light of this authority, we reject Monceret's contention that even though he did not consult with Mealer's attorney, Mealer herself waived her right to the presence of counsel. Such a holding would be inconsistent with the plain language and spirit of DR 7-104(A)(1). We likewise reject Monceret's argument that the issuance of a subpoena satisfies the "authorized by law" exception found in DR 7-104(A)(1). Such a conclusion would minimize the attorney's ethical obligation under the Rule and would create an exception that would threaten to swallow the Rule.

Accordingly, we conclude that the evidence does not preponderate against the judgment of the chancery court upholding the hearing panel's findings that Monceret violated DR 7-104(A)(1). Having so held, however, we observe that several of Monceret's contentions do bear consideration in terms of mitigation. First, there was no authority in Tennessee to supplement or explain DR 7-104(A)(1) at the time Monceret deposed Mealer.[6] The ABA Formal Opinion relied on in this opinion and by numerous other courts was not released until 1995, years after the events in this case. Moreover, there is apparently no dispute that Monceret discussed the presence of counsel with Mealer before the deposition and that Mealer elected to proceed without counsel. We conclude nonetheless that Monceret knew that Mealer was represented by counsel and that this knowledge triggered ethical responsibilities under DR 7-104(A)(1) irrespective of Mealer's actions. Accordingly, the private admonition, which is the least severe form of sanction, was appropriate.

## CONCLUSION

We conclude that DR 7-104(A)(1) prohibits an attorney from communicating with a party the attorney knows to be represented by counsel unless permitted to do by the party's counsel. We have further concluded that "party" as used in the Rule includes a witness who is represented by counsel. Finally, we conclude that the evidence supports the findings and conclusions of the hearing panel and chancery court that Monceret violated DR 7-104(A)(1). The judgment is affirmed. Costs are assessed against the appellant, A. Thomas Monceret, for which execution shall issue if necessary.

_____

[6] This factor only warrants consideration in mitigation. The language in the Rule is sufficiently clear to provide notice of what conduct is prohibited and does not rise to the level of a due process violation as alleged in Monceret's brief on appeal.

E. RILEY ANDERSON, CHIEF JUSTICE