Dena PALMER, Plaintiff–Appellant,

v.

PIONEER INN ASSOCIATES, LTD., A Limited Partnership, Defendant– Appellee.

No. 00–15397.

United States Court of Appeals, Ninth Circuit.

Argued June 12, 2001.

Submitted July 22, 2003.

Filed July 22, 2003.

Ian E. Silverberg, Reno, NV, for the plaintiff-appellant.

Miranda Du, McDonald Carano Wilson McCune Bergin Frankovich & Hicks, LLP, Reno, NV, for the defendant-appellee.

Before: GOODWIN, GRABER, and McKEOWN, Circuit Judges.

Opinion by Judge McKEOWN; Partial Concurrence and Partial Dissent by Judge GRABER.

## OPINION

McKEOWN, Circuit Judge:

This employment discrimination case, brought by Dena Palmer against a prospective employer, Pioneer Inn Associates, Ltd., involves the intersection of evidentiary and ethical issues. It returns to us after the Nevada Supreme Court resolved our certified question regarding the scope of acceptable ex parte contacts between an attorney and an employee of a represented party. We take up three issues on appeal: (1) whether the district court erred in granting summary judgment for Pioneer with respect to two of Palmer's three claims on the ground that she did not satisfy the test for prima facie discrimination set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); (2) whether, in light of the Nevada Supreme Court's answer to our certified question, the district court erred in excluding an affidavit from one of Pioneer's employees as a sanction for ex parte contact between Palmer's attorney and the employee; and (3) whether the district court abused its discretion in

barring testimony at trial about the two dismissed claims. We reverse the district court's grant of summary judgment and its exclusion of the employee's affidavit and remand for trial.

### FACTUAL AND PROCEDURAL BACKGROUND

This factual background is taken from the affidavits and other evidence presented in connection with the summary judgment motion. Because we do not reach any issue regarding trial evidence, it is unnecessary to address the evidence presented at trial. With respect to the appeal from a grant of summary judgment in Pioneer's favor, we review the facts in the light most favorable to Palmer, the nonmoving party. They are as follows: On January 20, 1997, Palmer contacted Greg Zamora, Pioneer's food and beverage director, and inquired about job openings at Pioneer. She was six months pregnant at the time. He told her that job openings existed and that she should file an application with Pioneer's personnel director, Julie Gonzalez. On January 21, Palmer filed an application and had a screening interview with Gonzalez. On her application, Palmer indicated that she was interested in "coffee shop" or "deli server" positions, and that she was available to work Monday through Friday from 8:00 a.m. to 4:00 p.m., and also would be working from 5:00 p.m. to 10:00 p.m. on those days at the Olive Garden restaurant. The next day, she called Zamora, who told that her that her application had been approved and that a deli position might be open. She agreed to accept this position. Zamora contacted her the following day and told her that he would like her to work six days a week as a floater waitress in all three Pioneer restaurants, an offer that Palmer accepted. Zamora told her to start orientation the following Tuesday. On Sunday, January 26, Palmer quit her job at the Olive Garden.

Before her orientation at Pioneer was to begin, Zamora contacted Palmer again, this time to tell her that he needed a supervisor and believed she was qualified for the position. They met to discuss the position, and Zamora introduced her to several other employees. He asked her to begin work on Monday, February 3. When she arrived that afternoon, he introduced her to the other employees but informed her that his supervisor, Guy Archer, had overturned Palmer's hiring due to her pregnancy. Zamora assured her that he would talk to Archer on her behalf. Palmer testified that when she next spoke with Zamora, approximately a week and a half later, he told her that Archer "was just not going to allow him to have me work there being pregnant and that he would definitely not allow me to be a waitress because I was pregnant."

Soon thereafter, Palmer notified Pioneer of her intent to file suit. Palmer received a right to sue letter from the Equal Employment Opportunity Commission, and filed suit in July 1997, charging unlawful termination under Title VII of the Civil Rights Act of 1964 and related state law violations.

Pioneer moved to disqualify Palmer's counsel on the basis of ex parte contacts with four Pioneer employees. Three of those contacts are not at issue in this appeal. The remaining contact involved communication between Palmer's attorney and George Kapetanakis, an executive sous chef at Pioneer. In April 1997, Kapetanakis had contacted Palmer's attorney after speaking with one of Palmer's friends. Kapetanakis then signed an affidavit stating: "During the month of January, 1997, I witnesses [sic] Mr. Greg Zamora interviewing ... [Ms. Palmer].... I inquired of Mr. Zamora whether he intended to hire [her] at which time Mr. Zamora told me that he had already hired her." The dis-

trict court found that Kapetanakis was a supervisor with responsibility for interviewing and hiring cooks, dishwashers, and sous chefs. The court concluded that "[b]ecause his job responsibilities included hiring employees, Kapetanakis was in a position to make statements concerning the hiring policies of Pioneer." *Palmer v. Pioneer Hotel & Casino*, 19 F.Supp.2d 1157, 1166 (D.Nev.1998) ("*Palmer I*"). The court accordingly held that counsel's contact with Kapetanakis constituted ex parte contact with a represented party and sanctioned Palmer's attorney by fining him and excluding the Kapetanakis affidavit.

Pioneer moved for summary judgment on all claims. The court concluded that because Palmer did not present evidence that the day shift waitress and supervisor positions remained open after she was rejected, and because Pioneer presented evidence that it did not continue to advertise for those positions, Palmer failed to satisfy the fourth prong of the *McDonnell Douglas* prima facie test for discrimination. The court granted summary judgment on those two claims. The remaining claim, which related to the deli server position, went to trial. On a motion in limine by Pioneer, the district court barred testimony regarding the supervisor and day shift waitress positions, but allowed testimony and cross-examination about the content of the meetings and conversations in which the jobs were discussed. The jury found for Pioneer, and this appeal followed.

#### DISCUSSION

#### A. SUMMARY JUDGMENT

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17, prohibits employers from failing or refusing to hire or discharging "any individual ... because of such individual's ... sex." *Id.* § 2000e–2(a)(1). Title VII defines discrimination "because of sex" as including discrimina-

tion "because of or on the basis of pregnancy, childbirth, or related medical conditions." *Id.* § 2000e(k).

■ To establish a prima facie case of discrimination, a Title VII plaintiff must offer evidence that "give[s] rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The prima facie case may be established "either through the framework set forth in *McDonnell Douglas Corp. v. Green* or ... [through] direct evidence of discriminatory intent." *Vasquez v. County of L.A.*, 307 F.3d 884, 889 (9th Cir.2002) (citation footnote omitted). Establishing a prima facie Title VII case in response to a motion for summary judgment requires only "minimal" proof and "does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.1994); *see also Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir.1985) ("[S]ummary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a Title VII dispute is the 'elusive factual question of intentional discrimination.'" (quoting *Burdine*, 450 U.S. at 255 n. 8, 101 S.Ct. 1089)).

■ We review de novo the grant of summary judgment in favor of Pioneer. *Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir.2000). Palmer presented sufficient direct evidence to survive summary judgment on all three of her employment claims. *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir.1998) ("'Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption.'" (alteration in original) (quoting *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir.1994))). Palmer

claimed that she was offered positions as a deli worker, a waitress, and a supervisor. She then stated that Zamora told her that Guy Archer "has overturned hiring you because you're pregnant," and later "told me that Guy Archer was just not going to allow him to have me work there being pregnant and that he would definitely not allow me to be a waitress because I was pregnant." Viewing the testimony in her affidavit in the light most favorable to Palmer as the nonmoving party, her testimony provides direct evidence sufficient to raise a material question of disputed fact as to whether Pioneer discriminated against her. The district court therefore erred in granting summary judgment on the day shift waitress and supervisor positions.

### B. SANCTIONS

We next consider the district court's sanctioning of Palmer's attorney for ex parte communication with Kapetanakis. Although we review the imposition of discovery sanctions for abuse of discretion, *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir.), *cert. denied*, 537 U.S. 1018, 123 S.Ct. 536, 154 L.Ed.2d 425 (2002), here the sanctions issue stems from resolution of a legal issue that we necessarily review de novo, *see El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1038 (9th Cir.2003).

The court excluded Kapetanakis's affidavit and assessed fees and costs against the attorney in the amount of $2,800. The district court reached its decision by reference to ABA Model Rule 4.2, adopted as Nevada Supreme Court Rule 182,[1] which states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Nev. Sup.Ct. R. 182. The commentary to Model Rule 4.2 explained that, in an organizational context, a "party" included a person (1) who had "managerial responsibility on behalf of the organization"; (2) "whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability"; or (3) "whose statement may constitute an admission on the part of the organization." Model Rules of Prof'l Conduct R. 4.2, cmt. 2 (1995).[2]

The district court determined that "[b]ecause his job responsibilities included hiring employees, Kapetanakis was in a position to make statements concerning the hiring policies of Pioneer." *Palmer I*, 19 F.Supp.2d at 1166. The court therefore concluded that Palmer's attorney was prohibited from having ex parte contact with Kapetanakis because Kapetanakis's statement fell under the party-opponent admission exception to the hearsay rule,[3] and his "ability to make binding admissions on the part of Pioneer ... placed him squarely

---

1. The court, through Rule IA 10–7(a) of the Local Rules of Practice, incorporated the Model Rules of Professional Conduct, as adopted and amended by the Nevada Supreme Court.

2. At the time that the district court issued its opinion, this commentary was contained within Comment 2. It was later moved to paragraph 4 of the Comment.

3. The exception provides that a "statement is not hearsay if ... (2) [t]he statement is offered against a party and is ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed.R.Evid. 801(d)(2)(D).

within category three of the Comment test." *Id.*

At the outset of this appeal, we were faced with the district court's interpretation of the third prong of Comment 2: statements that "may constitute an admission on the part of the organization." Because neither the Ninth Circuit nor the Nevada Supreme Court had published an opinion applying or explaining this comment, we certified the issue to the Nevada Supreme Court. The Nevada Supreme Court accepted our certification request and recast our question as follows:

> What test does Nevada use in applying Supreme Court Rule 182 to an employee of a represented organization?

*Palmer v. Pioneer Inn Assocs., Ltd.,* 59 P.3d 1237, 1238 (Nev.2002) (per curiam) ("*Palmer II*").

In 2002, after the district court's decision and after our certification order, Model Rule 4.2 and its commentary were amended. The rule itself was changed only minimally. Under the old rule, contact was permitted by "consent of the other lawyer" or as "authorized ... by law." In practice, contact was also authorized via court order, and the amendment incorporated this concept through addition of the phrase "or court order" at the end of the rule. The new rule reads:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law *or a court order.*

Model Rules of Prof'l Conduct R. 4.2 (2002) (emphasis added).

Unlike the rule, the comment was revised substantially, and now reads in relevant part:

> In the case of a represented organization, this Rule prohibits communications with a constituent of the organization, who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.

*Id.* at cmt. 7 (2002).

In its opinion on the certified question, the Nevada Supreme Court noted that, according to the Reporter's Explanation of Changes in the Ethics 2000 Commission Report, the "admission" clause "was deleted because it had been misapplied to situations when an employee's statement could be admissible against the organizational employer," when in fact the clause had been intended only "to encompass those few jurisdictions with a law of evidence providing that statements by certain employees of an organization were not only admissible against the organization but could not thereafter be controverted by the organization." *Palmer II,* 59 P.3d at 1242. The reporter's explanation therefore suggests that the rule was intended to apply more narrowly than the original comment suggested. It was precisely this now-deleted "admission" aspect of the comment that guided the district court's decision.

Ultimately, however, the Nevada Supreme Court did not embrace either the former or the revised comment.[4] The revisions to the comment thus do not control

---

4. According to Nevada Supreme Court Rule 150(2), the commentary does not bind the court but may be "consulted for guidance in interpreting and applying the Nevada Rules of Professional Conduct." *See also Palmer II,* 59 P.3d at 1241.

this case after all and, as the Nevada Supreme Court observed, "the former comment was never binding on Nevada lawyers, and so retroactivity is not a concern." *Id.*

█ After confirming that "[t]he primary purpose of [Rule 182] is to protect the attorney-client relationship from intrusion by opposing counsel," *id.* at 1240, the Nevada Supreme Court explained that

[t]he rule's protections undisputedly extend to organizational parties, who must act through their directors and employees. Accordingly, at least some of the organization's agents must be viewed as the equivalent of a "party" for the rule to have any effect. A conflict between policies arises, however. On one hand, the rule's protective purposes are best served by defining this pool of agents broadly. On the other hand, defining the pool more narrowly fosters the use of informal discovery methods.... The question then becomes how to apply the rule in a way that best balances the competing policies.

*Id.* at 1240–41 (footnotes omitted).

In light of that mandate, the court reviewed the various tests for determining which employees fell within the scope of the rule and rejected, among others, the party-opponent admission test relied upon by the district court below. *Id.* at 1244, 1248. The opinion provides a thoughtful and extensive survey of the various tests and the competing policy considerations. The court ultimately adopted the managing-speaking agent test, as laid out by the Washington Supreme Court in *Wright v. Group Health Hospital:*

"[T]he best interpretation of 'party' in litigation involving corporations is only those employees who have the legal authority to 'bind' the corporation in a legal evidentiary sense, *i.e.,* those employees who have 'speaking authority'

for the corporation.... It is not the purpose of the rule to protect a corporate party from the revelation of prejudicial facts. Rather, the rule's function is to preclude the interviewing of those corporate employees who have the authority to *bind* the corporation.

... [E]mployees should be considered 'parties' for the purposes of the disciplinary rule if, under applicable [state] law, they have managing authority sufficient to give them the right to speak for, and bind, the corporation."

*Palmer II*, 59 P.3d at 1248 (quoting *Wright*, 103 Wash.2d 192, 691 P.2d 564, 569 (Wash.1984) (citations omitted)). The Nevada Supreme Court also clarified that

an employee for whom counsel has not been retained does not become a "represented party" simply because his or her conduct may be imputed to the organization; while any confidential communications between such an employee and the organization's counsel would be protected by the attorney-client privilege, the facts within that employee's knowledge are generally not protected from revelation through ex parte interviews by opposing counsel.

*Id.*

The Nevada Supreme Court's enunciation of the applicable test for contact with a represented party dramatically changes the landscape of our case. Understandably, the district court's analysis was based on a then-pertinent comment to Model Rule 4.2. We now know, however, that Nevada rejects both the old and the new comments. Under the test enunciated by the Nevada Supreme Court, Palmer's counsel was barred from ex parte communication with Kapetanakis only if Kapetanakis had "managing authority sufficient to give [him] the right to speak for, and bind," Pioneer under Nevada law.

Pioneer has not alleged sufficient facts to show that Kapetanakis had speaking authority for Pioneer such that his statements would bind the organization in the context of this case. As the district court concluded, "there is no indication, either explicit or implicit, that Pioneer had authorized Kapetanakis to make statements concerning the hiring of individuals by other Pioneer employees," and "there is no allegation that Kapetanakis played any part in the employment decision affecting Plaintiff." *Palmer I*, 19 F.Supp.2d at 1165–66. These conclusions flow from the undisputed testimony of Kapetanakis. As a chef, Kapetanakis interviewed and hired cooks, dishwashers, and sous chefs for Pioneer's restaurants; those responsibilities were completely unrelated to the decision whether or not to hire Palmer. Kapetanakis testified during his deposition that he was not responsible for interviewing or hiring waitresses. Moreover, Kapetanakis came to play a part in this drama only by a fluke—a conversation with a mutual acquaintance that occurred many months after the incident. Kapetanakis's testimony stemmed from his role as a percipient witness, not from any privileged attorney-client communication, a distinction emphasized by the Nevada Supreme Court. *Palmer II*, 59 P.3d at 1248. The managing-speaking agent rule is not intended to shield Pioneer from the effects of the "prejudicial facts" in Kapetanakis's possession. *See id.* at 1245.

■ In light of the Nevada Supreme Court's adoption of the managing-speaking test, and the record concerning Kapetanakis's role in the organization, we reverse the district court's grant of sanctions—both the exclusion of the affidavit and the imposition of monetary sanctions.

With respect to exclusion of the affidavit and deposition testimony, the court's order states:

[T]here are consequences to Silverberg's ethics violation. The Court finds it appropriate to exclude the affidavit of Kapetanakis, as well as the portion of Kapetanakis's deposition transcript referring to the affidavit and the ex part [sic] communication, from *any* use at trial. *See* [*Faison v. Thornton*, 863 F.Supp. 1204, 1215 (D.Nev.1993)] (excluding evidence based on attorneys' unreasonable and imprudent conduct). Precluding Kapetanakis from testifying at trial, though, would simply punish the Plaintiff for her attorney's misconduct without providing a significant benefit to Pioneer, considering that Favero and Walker made statements mirroring Kapetanakis's. *See McCallum* [*v. CSX Transp., Inc.*, 149 F.R.D. 104, 111–12 (M.D.N.C.1993)] (adopting the practice of excluding only the unethically obtained Rule 801(d)(2)(D) admission from trial).

(Emphasis added.) Although the meaning of the order is not crystal clear, as a practical matter the only point of barring the affidavit would have been to bar the substance of the purportedly tainted testimony. Excluding the affidavit and deposition testimony but allowing Kapetanakis to testify at trial regarding his conversation with Zamora would have been no punishment at all; the exclusion of the affidavit would have been a mere technicality, and Palmer would have been able to get the same information in through direct examination. Though it is conceivable that this is what the judge had in mind, it seems illogical, and clearly Palmer's counsel thought so as well; he interpreted the order to mean that no testimony relating to Kapetanakis's conversation with Zamora would be admitted, and consequently decided not to call Kapetanakis, who would have had nothing else to offer, helpful or otherwise. The cases cited by the district

judge, which relate to the exclusion of information improperly obtained, support this interpretation.

The practical consequence of the exclusion of the Kapetanakis affidavit was therefore that the only useful testimony he could provide was barred at trial. This exclusion was not inconsequential, as the Kapetanakis testimony served as concrete corroboration that Pioneer had actually hired Palmer: in Kapetanakis's words, "Zamora told me that he had already hired her." Because of the prejudice occasioned by this evidentiary exclusion, Palmer is entitled to a new trial.

## C. EVIDENTIARY RULING

Finally, Palmer appeals the district court's grant of Pioneer's motion in limine excluding evidence relating to the waitress and supervisor jobs. Because we reverse the grant of summary judgment on those two positions and order a new trial as a result of the sanctions issue, the district court will necessarily need to reconsider the scope of allowable testimony in any subsequent trial. We therefore leave that determination for the trial judge in the first instance.

## CONCLUSION

The district court erred in granting summary judgment for Pioneer on the day shift waitress and supervisor positions; Palmer presented sufficient direct evidence of discrimination to survive summary judgment and proceed to trial. In light of the Nevada Supreme Court's decision on the scope of the prohibition on ex parte contacts between an attorney and the other party's employees, the district court should not have sanctioned Palmer's attorney by excluding the Kapetanakis affidavit and imposing monetary sanctions, an exclusion that effectively excluded any testimony that Kapetanakis had to offer.

Palmer is entitled to a new trial on the claim based on the deli server position. Finally, we leave to the district court's consideration on remand the evidentiary issue regarding the day shift waitress and supervisor positions.

## REVERSED AND REMANDED.

GRABER, Circuit Judge, concurring in part and dissenting in part:

I concur except with respect to the majority's holding that Palmer is entitled to a new trial concerning the deli server position. As to that holding, I respectfully dissent.

The district court barred from use at trial Kapetanakis' affidavit, which was prepared in connection with the summary judgment proceedings, and the portion of his deposition transcript referring to the affidavit. As we now know from the Nevada Supreme Court's decision concerning our certified question, that ruling was erroneous because the ethical violation on which it was premised turned out not to be a violation. The district court plainly held, however, that Kapetanakis could testify in person at trial. As the court put it: "Precluding Kapetanakis from testifying at trial, though, would simply punish the Plaintiff for her attorney's misconduct," which the court was unwilling to do. Thus, the majority is simply wrong when it asserts "that the only useful testimony[Kapetanakis] could provide was barred at trial" (slip op. at 10008) and when it refers to the absence of his live testimony as an "evidentiary exclusion" (*id.*). Assuming, as we must, that his live testimony would have been the same in substance as his affidavit and deposition (which also were under oath), *none* of his "useful" testimony "was barred at trial."

Notwithstanding the ruling that allowed Kapetanakis to testify in person at the trial, Palmer did not call him as a witness.

The failure to obtain Kapetanakis' testimony about the deli server position was a result, not of the sanctions order, but of Palmer's own decision (or neglect) in not calling him as a witness.

Accordingly, Palmer cannot show any prejudice from the district court's evidentiary ruling unless she can demonstrate that the ruling barred her from presenting evidence that otherwise would have been admissible. For example, Palmer failed to demonstrate that Kapetanakis was unavailable at trial, making his deposition or affidavit potentially admissible. *See* Fed. R.Evid. 804(b)(1) (allowing admission of deposition testimony in some circumstances); Fed.R.Evid. 807 (allowing admission of hearsay statements in some circumstances). Likewise, Palmer failed to show that Kapetanakis would have testified at trial inconsistently with the affidavit (and corresponding portion of the deposition) so that the affidavit and deposition excerpt could have been used either to impeach him or as substantive evidence. *See* Fed. R.Evid. 613 (providing for use of prior statements for impeachment purposes); Fed.R.Evid. 801(d)(1)(A) (providing that a statement made in a deposition is not hearsay if the declarant's trial testimony is inconsistent with the statement and the declarant is subject to cross-examination). In the absence of either showing, Palmer cannot demonstrate any harm or prejudice from the court's ruling.

For the foregoing reasons, I dissent from the majority's holding that Palmer is entitled to a new trial on her claim based on the deli server position. I would affirm the jury's verdict on that claim.